*In re* MARRIAGE OF DONALD A. KERBER, Petitioner-Appellee, and VONCELLA E. KERBER, Respondent-Appellant.

Fourth District   No. 4—90—0791

Opinion filed June 18, 1991.

Timothy D. Sturm, of Springfield, for appellant.

Brown, Hay & Stephens, of Springfield (Almon A. Manson, Jr., of counsel), for appellee.

JUSTICE KNECHT delivered the opinion of the court:

The circuit court of Sangamon County entered a judgment of dissolution of marriage dissolving the marriage between Donald and Voncella Kerber on September 18, 1990. The court awarded Voncella $600 per month in rehabilitative maintenance for a period of one year, her nonmarital property, and divided the marital property between the parties. Voncella appeals, challenging both the maintenance award and the distribution of marital assets. We affirm the distribution of marital assets but find the award of time-limited maintenance to be an abuse of discretion, and therefore modify the award.

Donald and Voncella Kerber were married on November 5, 1960. They had four children together, all of whom have reached majority age. The two youngest children, Don Kerber, Jr., and Leighann Kerber, ages 24 and 19, respectively, currently live with Voncella, and both work full time.

Voncella is 50 years old, has a high-school education, and does not appear to have any specialized skills for working outside the home. When the parties married, Voncella worked as a dental assistant, but quit when she became pregnant, and stayed home to raise the children. She testified that during the marriage Donald discouraged her from working outside the home, and at one point told her not to accept a job that was offered to her. Voncella did not have any employment until after the separation in June 1989, when she began working part time as a food demonstrator, promoting food products. She testified she wishes to enroll in a 10-month program in massage therapy to become a registered physical therapist. The cost of this program is approximately $4,000.

Voncella has $445 to $485 in monthly income from monthly payment on balance of a contract for deed from her brother, rent from an elderly woman living on one of her nonmarital properties, and from her job as a food demonstrator. In her financial affidavit, she claims $939 in monthly expenses, including $400 for food and

household supplies, $150 in gas, oil, and vehicle repairs, $225 average for utilities, $46 for phone, and $120 in medical insurance. Voncella also testified she pays approximately $600 in property taxes and insurance. However, when the itemized figures in this affidavit were contrasted at trial with her actual checkbook entries for these expenses, she acknowledged her expenses could be as low as $650 to $700 per month, and that a portion of the expenses listed included expenses for her two children who are living with her.

Voncella asserts she suffers from poor health, specifically a painful ankle, chronic migraine headaches, and trigeminal neuralgia, a nerve condition causing facial pain. She testified the headaches and trigeminal neuralgia are severe and she cannot work when she experiences these conditions. Harriet Becky, a neighbor of the Kerbers, confirmed Voncella's headaches are severe, and she suffers one at least once a month. Leighann Kerber also testified her mother experiences severe headaches and trigeminal neuralgia. Voncella testified she has not seen a doctor "in years" because she cannot afford it.

Donald Kerber is 53 years old, and earns $34,668 as an assistant administrator for the Secretary of State. In his first financial affidavit of July 21, 1989, he listed monthly expenses of $920.33. By the day of the hearing, on August 6, 1990, Donald's expenses rose to $1,630 per month, including approximately $300 for food and household expenses, $85 for vacations, $175 in cigarettes and liquor, and $250 in attorney fees. His testimony revealed he usually pays only $100 per month in attorney fees. He also testified he was living with Linda Travis, and his expenses of meals out ($70), vacation ($85), liquor, beer, and cigarettes ($175), constituted his share of the expenses.

On October 23, 1990, the circuit court entered an amended judgment of dissolution of marriage. The court ordered Donald to pay Voncella $600 per month in rehabilitative maintenance for a period of one year "at which time the court shall review the rehabilitative maintenance award." The court distributed the marital and nonmarital assets as follows, with the values as to each stipulated to by the parties:

|  | Voncella | Donald |
| --- | --- | --- |
| Marital residence | $49,000.00 | |
| Fiat pension | | $25,209.46 |
| Personal property | 3,010.00 | |
| Knights of Columbus | | |
| Policy No. W13169 | | 541.59 |
| Policy No. L68289 | 2,516.00 | |

| | | |
|---|---:|---:|
| IRA No. 100B5751 | | 2,484.66 |
| Metropolitan insurance policy | | 12,117.82 |
| Series E and EE bonds | 4,146.51 | 4,146.51 |
| 1983 Thunderbird | 700.00 | |
| 1988 Plymouth | | 70.00 |
| State of Illinois pension | | 4,470.52 |
| | $59,372.51 | $49,040.56 |
| Voncella's nonmarital property: | | |
| 208 N. 2d Street, Riverton | $15,000.00 | |
| Two 40' by 100' empty lots in Riverton | 6,000.00 | |
| Balance due on a contract for deed from John Alex Bonas | 4,900.00 | |
| Bank of Riverton stock 920 shares at fair market value of $4.50 per share | 4,144.50 | |
| | $30,044.50 | |
| TOTAL | $89,417.01 | $49,040.56 |

This appeal followed.

■ An award of maintenance is warranted when the court finds the spouse seeking maintenance lacks sufficient property, including marital property, to provide for her reasonable needs and is unable to support herself. (Ill. Rev. Stat. 1989, ch. 40, par. 504(a); *In re Marriage of Wade* (1987), 158 Ill. App. 3d 255, 269, 511 N.E.2d 156, 166.) A spouse need not be reduced to poverty before maintenance is appropriate. (*In re Marriage of Hart* (1990), 194 Ill. App. 3d 839, 852, 551 N.E.2d 737, 745 (Steigmann, J., specially concurring).) Further, a spouse is not required to sell off his or her assets or capital in order to maintain the standard of living established during the marriage. *In re Marriage of Emery* (1989), 179 Ill. App. 3d 744, 750, 534 N.E.2d 1014, 1018.

■ An award of maintenance is within the discretion of the trial court and should not be reversed unless it constitutes an abuse of discretion or is against the manifest weight of the evidence. (*In re Marriage of Zummo* (1988), 167 Ill. App. 3d 566, 574, 521 N.E.2d 621, 626.) Under section 504 of the Illinois Marriage and

Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1989, ch. 40, par. 504(a)), the court properly found Voncella was entitled to an award of maintenance.

■ However, the trial court abused its discretion in failing to make Voncella's maintenance award permanent. Section 504(b) of the Act provides maintenance "shall be in such amounts and for such periods of time as the court deems just." (Ill. Rev. Stat. 1989, ch. 40, par. 504(b).) What constitutes a "just" time period for the award is made on the consideration of all relevant factors, including (1) the financial resources of the party seeking maintenance, including his or her marital property; (2) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment; (3) the standard of living established during the marriage; (4) the duration of the marriage; (5) the age and the physical and emotional condition of each of the parties; (6) the ability of the spouse paying maintenance to meet his or her needs while meeting those of the spouse seeking maintenance; and (7) the tax consequences of the property division of the parties. Ill. Rev. Stat. 1989, ch. 40, par. 504(b).

■ In light of these factors, it is apparent the court abused its discretion in awarding Voncella maintenance for a period of one year, even though at that time the court would review the award, and not necessarily terminate it. (*In re Marriage of Albiani* (1987), 159 Ill. App. 3d 519, 525, 512 N.E.2d 30, 34 (time-limited maintenance with review does not terminate at the end of the stated time period).) Almost every one of the statutory factors indicates this was a classic case for the award of permanent maintenance. The parties had a marriage of long duration. Voncella has limited resources to meet her needs independently. She has only a high-school education, so the time needed for her education or training to enable her to seek employment somewhere other than, *e.g.*, a fast-food restaurant, will be significant. Voncella suffers from debilitating migraine headaches, trigeminal neuralgia, and a painful ankle. Because of the agreed-upon division of labor during her marriage, Voncella stayed home and raised the children, and is thus attempting to enter the work force relatively late in life, with limited skills. Donald, however, because of the division of labor that he requested, was able to gain marketable skills which enable him to earn over $34,000 working for the Secretary of State. As Justice Steigmann stated in his special concurrence in *Hart*:

> "Marriage is a partnership, not only morally, but financially. Spouses are coequals, and homemaker services must be rec-

ognized as significant when the economic incidents of divorce are determined. Petitioner should not be penalized for having performed her assignment under the agreed-upon division of labor within the family. It is inequitable upon dissolution to saddle petitioner with the burden of her reduced earning potential and to allow respondent to continue in the advantageous position he reached through their joint efforts." *Hart*, 194 Ill. App. 3d at 853, 551 N.E.2d at 745 (Steigmann, J., specially concurring).

Under these circumstances, it is inappropriate to review Voncella's maintenance to ensure she will vigorously pursue employment. Especially with regard to long marriages such as this, the desire of the former spouse and her potential employability are not mutually exclusive with an order of permanent maintenance. Accordingly, we modify the award of maintenance, pursuant to our authority under Supreme Court Rule 366(a)(5) (134 Ill. 2d R. 366(a)(5)), to $600 per month permanent maintenance.

The court's distribution of marital assets did not, however, constitute error. The court awarded Voncella nonmarital assets in the amount of $30,044.50. She also received $59,372.51 worth of marital assets, including the marital residence, personal property in the residence, an insurance policy, bonds, and a 1983 Thunderbird car. Donald received $49,040.56 worth of the marital assets.

A court's distribution of marital property should not be reversed absent a showing the court abused its discretion, *i.e.*, no reasonable person could adopt the trial court's position. (*Hart*, 194 Ill. App. 3d at 847, 551 N.E.2d at 741.) Section 503(d) of the Act provides the court should distribute the marital property in just proportions, considering all relevant factors, including a number of statutory factors.

Voncella argues the court erred because it distributed more liquid assets to Donald. Given her lack of vocational skills, it is unlikely she will be able to sustain herself in the manner she became accustomed to during marriage, and since she was not awarded any of the pensions, she will have only 15 years to build a retirement fund. She further argues she will have to deplete marital and nonmarital assets in order to support herself.

It is true the assets distributed to Donald may be somewhat more liquid, but that does not render the award an abuse of discretion. Voncella has the marital residence in which to live. In addition, she owns $30,000 worth of nonmarital property, including real property in Riverton, the balance due on the contract for deed, and

approximately $4,100 of Bank of Riverton stock. Under these circumstances, the court's award of 55% of the marital assets to Voncella does not constitute an abuse of discretion.

The judgment of the circuit court of Sangamon County is affirmed as modified.

Affirmed as modified.

LUND, P.J., and STEIGMANN, J., concur.