*In re* MARRIAGE OF HOWARD R. MARTIN, Petitioner-Appellee, and LINDA H. MARTIN, Respondent-Appellant.

Fourth District   No. 4—91—0400

Opinion filed January 16, 1992.

Arnold F. Blockman and Jerome P. Lyke, both of Hatch, Blockman, McPheters, Fehrenbacher & Lyke, of Champaign, for appellant.

Gary R. Lietz, of Flynn, Palmer, Tague & Lietz, of Champaign, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

On February 18, 1987, the circuit court of Champaign County entered an order dissolving the marriage of Howard and Linda Martin. In January 1989, the court awarded Linda $2,000 a month in maintenance for 24 months, subject to review at the end of that time. At the review hearing, the court denied Linda's petition to extend the maintenance award. Linda appeals, contending the court abused its discretion by placing improper emphasis on the short duration of the marriage. We reverse.

Howard and Linda Martin were married on September 20, 1982. Prior to their marriage, they entered into an antenuptial agreement which specified division of all marital property in the event of a divorce. Linda filed a motion to set aside the antenuptial agreement and a hearing on that motion was held in March 1988. In September 1988, the court made the following findings of fact: Linda and Howard dated for three years prior to the marriage and the signing of the antenuptial agreement; while they were dating, Howard told Linda he had a net worth of approximately $3 million; before entering into the antenuptial agreement, Linda knew Howard was the principal owner of a successful automobile dealership on which a restaurant and grocery store were located, was a director of and owned stock in a bank, and owned a house in Champaign, Illinois, condominiums in Boca Raton, Florida, and Palm Springs, California; Howard's attorney explained the terms of the agreement to both parties, invited questions about the terms, told Linda she should have the agreement reviewed by another attorney, and directed in-

quiries to her to confirm the signatures and acknowledgements; and Linda also received Howard's financial statement.

Based on these findings, the trial court concluded the provisions of the agreement in which Linda waived her right to claim any interest in Howard's property were enforceable. The court found Linda voluntarily entered into the agreement and she was sufficiently advised as to Howard's financial affairs such that she could make a knowing election in regard to the property waiver. However, the court noted premarital agreements in which one party waives the right to seek spousal support are disfavored under Illinois law and will not be enforced unless waiver is given in exchange for significant financial consideration. Since at the time the parties entered into the antenuptial agreement Linda received no financial settlement and gave up her right to receive substantial alimony payments from her previous husband, the court granted that part of Linda's motion which sought a declaration that the provision in which she waived her right to claim maintenance was unenforceable. The court also found Linda's current earnings did not allow her to maintain a lifestyle consistent with that which she enjoyed during the marriage.

In January 1989, a hearing was held on Linda's motion for maintenance. Linda was 48 years old, had one son from her first marriage and worked as a sales associate at Robeson's Department Store. She earned $3.55 an hour and worked only 20 hours per week because of back problems. Linda had a high-school diploma and had taken one college course. She had worked as a stenographer from 1958 to 1960 and as a retail salesperson for approximately eight months in 1982. She had not taken any other courses nor looked for any other jobs since 1982. She received $1,250 a month in unallocated maintenance and support from her first husband until her marriage to Howard.

Linda testified that the parties had traveled extensively between Howard's three residences, especially during the winter months, as well as taking various other trips. They went out twice a week during the marriage and entertained in their home once every week or two. Linda did not work during the marriage, at Howard's request, so she would be available to travel with him on business and pleasure vacations. Howard gave her $2,000 a month for expenses during their marriage. During the separation, Linda lived on her salary from Robeson's and money she had in money market and mutual fund accounts.

On cross-examination, Linda testified Howard made voluntary payments to her totalling approximately $95,000 between 1984 and 1988. Howard also provided her with a car and paid for the gas until 1988. Prior to the entry of the dissolution, he paid for a new roof on an apartment building owned by Linda, paid her real estate taxes and mortgage on property she owned and gave her $10,000 to furnish her own condominium. However, Howard took tax deductions for these items since the parties filed joint tax returns.

Based on this testimony, the court concluded Linda was without sufficient income to provide for herself and was entitled to maintenance. The court found Linda gave up her right to maintenance from her first husband upon her marriage to Howard. The court noted the standard of living during the marriage was lavish, with condominiums in Florida and California, country club memberships and expensive cars. The court found Howard had the ability to pay maintenance and that Linda made no effort to seek additional training or education to be anything other than a salesperson. The court then awarded maintenance in the amount of $2,000 a month, effective January 1, 1989, for a period of 24 months, the award to be reviewed by the court at the end of that time. The court also made the following statement: "I would indicate that there's every reason to believe that that 24 months may well be the total duration of the maintenance award." Neither party appealed that judgment.

On March 19, 1991, a hearing was held regarding Linda's motion to review and extend the maintenance award. Linda testified that since the last court hearing, she had reduced her living expenses from $3,600 to $2,000 a month. She testified that one week after the January 1989 court hearing, she had enrolled in and completed the last three weeks of a five-week real estate course and had become licensed to sell real estate. She took a job with Miller & Miller, Ltd., realtors, as a salesperson in the spring of 1989. In February 1990, Linda left Miller & Miller and acquired a similar position with Prudential Landmark Real Estate Company. She testified she worked at least 40 hours per week, plus showed houses on the weekends. Linda stated she attends seminars and subscribes to publications to keep current in the field. She earned $100 in 1989, $3,700 in 1990, and had not yet earned any money in 1991. At the time of the hearing, however, she had sold one house, which would provide her with some income after the closing, set for April. Linda stated she received no fringe benefits from her employer and worked strictly on a commission basis. She withdrew $4,000 from her savings to support herself in January and February 1991. Linda

had paid her rent for March but had no funds to pay her other monthly bills. Linda's car was owned by her son-in-law, who made the car payment. Howard's financial affidavit was stipulated to by the parties and listed his net worth at $4.5 million.

The court concluded Howard's ability to pay was not an issue. The court noted the duration of the marriage was approximately two years during which time Linda accompanied Howard on trips back and forth across the country for business and pleasure purposes. The court stated Howard voluntarily paid Linda at least $70,000 during the time between the filing of the petition for dissolution of marriage and the granting of that petition. The fact that Linda gave up maintenance from her first husband upon marriage to Howard was acknowledged and the court stated it took that into account when awarding the $2,000-a-month temporary maintenance. Finally, the court concluded Linda made a poor career choice when attempting to enter the real estate business. The court stated:

"I think a fair assessment, for someone who was in then her mid-forties and choosing a career, was that real estate was not a very viable proposition. Even if it was, taking a two-week, basically, training course to prepare oneself for what was going to or potentially might have to be your only source of income doesn't seem to me to be the sort of attention to career enhancement that is required by the [In re Marriage of Mittra (1983), 114 Ill. App. 3d 627, 450 N.E.2d 1229,] case, among others, in regard to what is and isn't maintenance. And one of the things that has definitely been indicated is that maintenance is not some sort of annuity, that the person has an obligation to try to better themselves, and Ms. Martin isn't bettering herself—in fact, she's going backwards, as far as any sort of income ability. I don't think the Court can ignore things that are generally known in the community. She could make more working down at McDonalds than she is from her so-called real estate career. ***

She's not under any handicap. She's sought no training to advance herself. The career she chose is one that was demonstrably not the sort of career that was going to enhance her ability—and, even in pursuing that, apparently she had one listing for a year. And I say this not to be facetious, but it's almost like the TV commercial where the Sam's rug—where the fellow only has one rug to sell and he doesn't want to advertise because somebody might buy his rug. One house to sell in a year, and apparently two or three the next year, in

my opinion, simply is not in keeping with the affirmative obligation of Mrs. Martin to better herself."

The court noted Howard made the temporary maintenance payments on time and—adding that sum to the money already paid—concluded, "I believe Mr. Martin is paid up for this marriage." The court denied Linda's request that the maintenance be extended and she now appeals that order.

An award of maintenance is warranted when the court finds the spouse seeking maintenance lacks sufficient property, including marital property, to provide for her reasonable needs and is unable to support herself. The spouse need not be reduced to poverty before maintenance is appropriate. Further, a spouse is not required to sell off his or her assets or capital in order to maintain the standard of living established by the marriage. (*In re Marriage of Kerber* (1991), 215 Ill. App. 3d 248, 574 N.E.2d 830.) The recipient of the maintenance award is under an affirmative obligation to seek appropriate training and skills to become financially independent in the future. The failure to make good-faith efforts to achieve this goal, following a reasonable time frame during which the objective should be accomplished, might form the basis for a petition for modification pursuant to section 510(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1989, ch. 40, par. 510(a)). (*In re Marriage of Mittra* (1983), 114 Ill. App. 3d 627, 450 N.E.2d 1229.) An award of maintenance is within the sound discretion of the trial court and will not be reversed on appeal unless it constitutes an abuse of discretion or is against the manifest weight of the evidence. *In re Marriage of Hart* (1990), 194 Ill. App. 3d 839, 851, 551 N.E.2d 737, 744.

■■ Linda first contends Howard owes her $6,000, representing three maintenance payments for January through March 1991.

The trial court's order of January 4, 1989, provided, in pertinent part, "I will order [Howard] to pay, effective January 1, 1989, the sum of $2,000 per month, payable on the first day of the month, and to continue for a period of 24 months, to be reviewed by the Court at the end of that time." On December 12, 1990, Linda filed a petition to review the maintenance award and a hearing on that petition was scheduled for December 31, 1990. However, the docket entry for that date indicates Linda moved for a continuance as her attorney was unable to make the hearing due to inclement weather. The court granted Linda's motion, over objection by Howard, and continued the cause for March 19, 1991, on which date the petition was denied.

Linda cites this court's opinion in *Kerber* (215 Ill. App. 3d 248, 574 N.E.2d 830), and that in *In re Marriage of Albiani* (1987), 159 Ill. App. 3d 519, 512 N.E.2d 30, for the proposition that time-limited maintenance does not terminate at the end of the stated time period but is subject to review at that time. In *Kerber*, we held the circuit court abused its discretion in failing to make the wife's maintenance award permanent. We stated:

"[I]t is apparent the court abused its discretion in awarding [the wife] maintenance for a period of one year, even though at that time the court would review the award, and not necessarily terminate it." (*Kerber*, 215 Ill. App. 3d at 253, 574 N.E.2d at 833.)

In support, we cited *Albiani* with the parenthetical notation "time-limited maintenance with review does not terminate at the end of the stated time period." (*Kerber*, 215 Ill. App. 3d at 253, 574 N.E.2d at 833.) In *Albiani*, the court, in concluding the amount and duration of the maintenance award was not an abuse of discretion, stated:

"We must consider, too, that at the end of the two-year period, maintenance will not *automatically* be terminated, but rather will be subject to review at that time." (Emphasis added.) *Albiani*, 159 Ill. App. 3d at 525, 512 N.E.2d at 34.

Neither *Kerber* nor *Albiani* addressed the issue of whether the right to receive maintenance extends beyond the time period stated in the court's order. Rather, these cases establish the power of a court to award temporary maintenance for a specific period of time, to review the award at the end of that period, and to determine whether the maintenance award should be extended. We, therefore, reject Linda's contention that she is entitled to $6,000 representing maintenance payments for January, February, and March 1991.

Linda also contends the court abused its discretion in denying her petition to extend the maintenance award by placing improper emphasis on the duration of the marriage. She further contends the court, by virtue of its comments on January 4, 1989, had already determined that maintenance would not be extended past the 24-month period and that she satisfied her affirmative obligation to find appropriate employment.

Section 504(b) of the Act sets forth seven relevant factors for the trial court to consider when making a determination of the amount and duration of a maintenance award. These factors are (1) the financial resources of the party seeking maintenance, including his or her marital property; (2) the time necessary to acquire suffi-

cient education or training to enable the party seeking maintenance to find appropriate employment; (3) the standard of living established during the marriage; (4) the duration of the marriage; (5) the age and physical and emotional condition of both parties; (6) the ability of the spouse paying maintenance to meet his or her needs while meeting those of the spouse seeking maintenance; and (7) the tax consequences of the property division of the parties. (Ill. Rev. Stat. 1989, ch. 40, par. 504(b).) No one factor is determinative of the issue concerning the propriety of the maintenance award once it has been determined that an award is appropriate. (*In re Marriage of Jones* (1989), 187 Ill. App. 3d 206, 543 N.E.2d 119.) The factors to be considered in making an award of maintenance are applicable to modification proceedings. *In re Marriage of Henzler* (1985), 134 Ill. App. 3d 318, 480 N.E.2d 147.

In looking at the factors set forth in section 504(b) of the Act, at least six of those factors weigh in favor of Linda. First, the evidence established Linda did not have enough resources to meet her financial obligations. She had some funds in money market and mutual fund accounts from which she had been drawing to sustain herself but she is not required to deplete her capital in order to survive. Next, the standard of living during the marriage was extremely lavish and, as Linda testified, quite different than her present situation. Third, Linda was in her early 40's when she married Howard and late 40's when they were divorced. She had worked only two years and eight months of her life when she married Howard. Linda also testified she had back problems and there was evidence of emotional problems as well. There is no dispute Howard had the ability to pay maintenance. At the hearing on March 19, 1991, Howard's net worth was over $4.5 million. Moreover, there is no evidence he will incur any detrimental tax consequences by the maintenance award.

The only factor that seems clearly in Howard's favor is the duration of the marriage. Howard contends they were married for only two years. In fact, they were married in September 1982 and the dissolution was granted in February 1987, evidencing a 4½-year marriage. However, even so, this is a marriage of short duration, which is a factor to consider in awarding maintenance. Howard contends the factor relating to the time necessary for Linda to acquire sufficient education and training to find appropriate employment also weighs in his favor. He argues Linda knew, from the time of his filing the petition for dissolution, she needed to seek appropriate employment to become financially independent. Howard refers

to the court's comments regarding Linda's career choice and success rate in that particular field as evidence she has not made an effort to attain financial independence.

We disagree. The record established Linda, within a short period of time after the hearing awarding her temporary maintenance, enrolled in and completed the last three weeks of a five-week real estate class and passed an examination to become licensed to sell real estate. We note Linda's limited success in her endeavors, but we disagree with the court's assessment of her career choice. Linda may not have begun her efforts toward financial independence as soon as she might have; however, given the other factors which weigh in her favor, this delay does not weigh against her.

We note Linda gave up $1,250-a-month maintenance from her first husband upon marriage to Howard. In *In re Marriage of Carney* (1984), 122 Ill. App. 3d 705, 462 N.E.2d 596, the court considered the fact the wife gave up permanent maintenance upon marriage to the husband as a factor in holding the trial court abused its discretion in awarding her limited maintenance. Although not a statutory factor set forth in section 504(b), such evidence can be considered in determining maintenance. In awarding maintenance, courts have wide latitude in considering what factors should be used in determining reasonable needs, and the trial court is not limited to the factors listed in the governing statute. *In re Marriage of Krupp* (1990), 207 Ill. App. 3d 779, 566 N.E.2d 429.

After careful consideration of the seven factors set forth in section 504(b) of the Act, and the additional factor of Linda foregoing her right to maintenance from her first husband, we find the circuit court abused its discretion in denying Linda's petition to review and extend the temporary maintenance award. The circuit court's decision is reversed and remanded for further determination as to amount and duration of rehabilitative maintenance.

Reversed and remanded.

GREEN, P.J., and KNECHT, J., concur.