*In re* MARRIAGE OF MARTHA M. MOHR, Petitioner-Appellee and Cross-Appellant, and PAUL R. MOHR, Respondent-Appellant and Cross-Appellee.

Fourth District    No. 4—93—0698

Argued March 8, 1994.—Opinion filed March 11, 1994.

J. Steven Beckett and Roger B. Webber (argued), both of Beckett & Associates, P.C., of Urbana, for appellant.

Robert G. Frederick (argued), of Johnson, Frank, Frederick & Walsh, of Urbana, for appellee.

JUSTICE LUND delivered the opinion of the court:

In this marriage dissolution case in the circuit court of Champaign County, respondent Paul Mohr appeals and petitioner Martha Mohr cross-appeals from the May 19, 1993, "JUDGEMENT ORDER ON ANCILLARY ISSUES." On July 16, 1992, the trial court entered an uncontested judgment dissolving the marriage of the parties. This earlier judgment found that the marriage of July 27, 1985, produced no children and that petitioner was 58 and respondent 63 years of age. Ancillary matters were reserved.

The May 19, 1993, order provided for division of property and maintenance. Portions of that order relative to the issues on appeal provided:

"F. Petitioner is awarded as her property *** $25,000 as her share of the 1992 crop."

"7. Factors relevant to the apportionment of the parties' marital estate are:

* * *

d. At the time the parties married, Petitioner gave up $1[,]000 per month maintenance payments and paid health insurance which she received as part of the settlement in her divorce from Dr. Twohey, as well as the security afforded her by a life insurance policy which Dr. Twohey was required to maintain in effect, based upon Respondent's assurance that he could and would support her for the remainder of her life,

e. The parties executed an Antenuptial Agreement prior to their marriage,

* * *

z. In their Antenuptial Agreement, the parties agreed that each would contribute 1/2 of the money needed to pay their combined expenses,

aa. Pursuant to the parties['] expense[-]sharing agreement, Petitioner contributed in excess of $106,000 toward payment of the parties' combined expenses during the parties' marriage and Respondent contributed in excess of $66,000 toward payment of those expenses."

In addition to the award of $25,000 and other assets to petitioner, the court provided:

> "J. Respondent shall pay to Petitioner, as maintenance, $750 per month which payments shall continue until Petitioner dies, remarries or cohabits with another on a continuing, conjugal basis."

## RESPONDENT'S ISSUES ON APPEAL

Respondent contends on appeal that awarding petitioner $25,000 of the 1992 crops from his nonmarital farmland was in error and a nullity because neither party asserted such crop was marital property. As an alternative, he contends it was error to award $25,000 as her share of the 1992 crop from marital farmland because the crop from that land was worth only $9,500 before expenses were deducted. He also contends that such an award from the 1992 crop would be a substantial injustice, because it virtually eliminates respondent's 1993 income.

Respondent also contends it was error, when determining maintenance, to consider maintenance given up by plaintiff when she married respondent.

## PETITIONER'S ISSUES ON CROSS-APPEAL

Petitioner contends the trial court erred in not awarding her at least $1,000-per-month maintenance and payment of her medical insurance by respondent. She also contends the trial court erred in not awarding her an additional $20,000 to equalize the parties' living expenses pursuant to the parties' prenuptial agreement provision on living expenses.

## ANALYSIS

At the time the parties married on July 27, 1985, petitioner was 51 years of age and respondent was 55. Both of them had grown children from their prior marriages. Petitioner's settlement agreement from her previous marriage provided her with $1,000-per-month alimony, complete health coverage, and a $100,000 life insurance policy on her ex-husband's life. Petitioner claims she voiced concerns over losing this support, but respondent allegedly reassured her by promising he would take care of her for the rest of her life.

An antenuptial agreement was executed prior to the marriage, providing that each party would contribute half their combined living expenses. Evidence indicated that petitioner contributed in excess of $106,000 toward these expenses, while respondent paid in excess of $66,000. During their seven-year marriage, both parties worked outside the home. Petitioner was employed as a retail clerk and

earned between $10,000 and $12,000 per year. Respondent farmed land totaling 420 acres. This farmland was comprised of 40 acres purchased during the marriage and owned in joint tenancy by the parties, 80 acres which respondent owned prior to the marriage, and 300 acres which he leased under a crop-sharing agreement. The parties separated in late November or early December 1991.

The trial court's judgment order on ancillary issues designated the 40 acres of joint tenancy farmland as marital property subject to apportionment. Also designated as marital property is the "1992 crop." Respondent was assigned as his nonmarital property the 80 acres of farmland owned prior to the marriage, as well as the grain in storage from the 80 acres. Petitioner was awarded "$25,000 as her share of the 1992 crop."

Respondent contends there is no rational basis for this $25,000 award. The order clearly states that respondent was awarded the crop from his 80 acres of nonmarital land. Since the crop from the 40 acres owned jointly with petitioner has a total value of approximately $9,500, less expenses, respondent argues that a $25,000 award as a share of the 1992 crop simply makes no sense. The award only makes sense if income from the 300 acres of leased land is taken into account. However, income derived from the crop-sharing agreement on the 300 acres is not specifically mentioned anywhere in the trial court's order and, respondent claims, the issue was never litigated at trial.

Furthermore, respondent contends that marital assets must be valued at the time of dissolution, July 16, 1992. At this time, the crop was still standing in the field and the parties' pretrial memoranda never attempted to value this crop. Finally, respondent contends that neither party asserted in the pleadings that petitioner was entitled to a share of the entire crop.

■ Petitioner contends these issues are being raised for the first time on appeal and are therefore waived. We recognize that neither the filing of nor the failure to file a post-trial motion in nonjury civil cases limits the scope of review. (134 Ill. 2d R. 366(b)(3)(ii).) As long as the issue sought to be contested on appeal is presented to the trial court, then the issue is not waived by failure to file post-judgment pleadings. (See *In re Marriage of Harper* (1989), 191 Ill. App. 3d 245, 247, 547 N.E.2d 574, 575-76 (where the trial court's failure to follow a statutory requirement was held waived because that specific issue was not brought to the attention of the trial court).) Here, the propriety of cash awards and the amount thereof were at issue in the trial proceedings. Waiver does not apply, and we will address respondent's argument.

Petitioner's prayer for relief contained a specific reference to the crop money derived from the parties' joint farmland. No specific prayer is made for a division of income from leased farmland. However, petitioner does request an award for any further relief as the court may deem just. Furthermore, both parties' prejudgment pretrial memorandums listed the amount of income as disputed issues. As part of this memorandum, petitioner included in her settlement position that she receive a fair share of the farm business which had been run through a joint account. Listed separately is a demand that she receive 20 acres of land and its profits. Respondent's entire farm business, including business associated with the 300 leased acres, was run through a joint checking account with petitioner. Based upon these facts, we have no doubt that the issue of income derived from the 300 acres of leased land was adequately raised prior to trial.

We also find the issue was fully litigated at trial. Respondent, called as an adverse witness, was asked, "Of the part you are going to receive of the 300 acres that you farm for the landlord, what is that worth to you?" The fact that petitioner's counsel was not able to obtain a precise answer to this question is largely due to respondent's reluctance to answer. The trial court had before it evidence detailing respondent's gross farm income during the entire course of their seven-year marriage. This, combined with additional evidence gleaned from respondent's testimony, was sufficient to establish an approximate value for the 1992 crop.

Ignoring the issue of income from the leased land, respondent points to joint exhibit A as proof that the parties only contested petitioner's share of the crop from the marital 40 acres, not from petitioner's nonmarital 80 acres of farmland. The exhibit, titled "Mohr Marriage *Marital Assets*," lists only the crops from the marital 40 acres. Since the value of these crops was in dispute, an asterisk referred to the bottom of the page where the parties gave a stipulated value for the "remaining grain from 1992 crop for all acres farmed and in storage." Respondent contends this reference to the total value of the 1992 crop confused the trial court, misleading it into believing that the entire 1992 crop was marital. When the footnote to the stipulation is excluded, respondent argues that the stipulation clearly states that marital crops are limited to the jointly owned 40 acres.

Aside from any confusion this exhibit may have created, respondent argues that the trial court erred as a matter of law in deciding the 1992 farm crop from all farmland was marital property and subject to apportionment. The parties' antenuptial agreement contained a provision stating:

"[T]he parties] *** shall each have control of his or her separate property *** and [ ] receive all monies, rents, issues, income and proceeds thereof, except *** such monies, rents, issues, income and proceeds which are deposited in a joint tenancy checking account or savings account without interference from the other and to be withdrawn for any purpose by either party."

Respondent contends that since the crops were still in the field at the time of dissolution and not in a joint account, the antenuptial agreement requires that the crops be regarded as separate property. We disagree.

■ The antenuptial agreement, which only governs property owned by the parties, has no bearing whatsoever on crops grown on leased land. We assume the antenuptial agreement is the reason the trial court awarded respondent the grain from his own 80 acres. Since the entire farm business was operated through a joint checking account with petitioner, there is a question whether this reasoning is correct. Regardless, we find the above-quoted provision of the antenuptial agreement irrelevant to the present issue.

Respondent also cites another provision of the antenuptial agreement which states, in effect, that petitioner released all claims to property in his possession prior to the marriage. He argues that petitioner would thus be unable to claim any interest in crops grown on not only the solely owned 80 acres, but also the crops grown on the 300 acres rented on a crop-share basis. Such an extended interpretation of the antenuptial agreement would basically prohibit petitioner from claiming any income earned by respondent during the marriage. Most of respondent's income came from the crops grown on the 80 and 300 acres. We refuse to give this strained interpretation to the terminology of the agreement.

Because the marriage was dissolved on July 16, 1992, respondent contends that an interest in the growing crops should not have been awarded to petitioner. In *Loepker v. Wesselman* (1991), 210 Ill. App. 3d 908, 569 N.E.2d 321, plaintiff leased farmland from a bank which had foreclosed against a third party. The lease conditioned the term on the possibility of redemption. The redemption took place when crops were growing. The opinion held the crops went with the land and that plaintiff could not claim an interest thereon. (*Loepker*, 210 Ill. App. 3d at 909, 569 N.E.2d at 322.) This case is not relevant to the present one.

To hold otherwise would suggest that earned farm income was not marital property. Crops grown on nonmarital property can be considered in determining marital income and marital property. (*In re Marriage of Patrick* (1992), 233 Ill. App. 3d 561, 570-71, 599 N.E.2d

117, 123.) While one on a monthly salary is paid for labor or services for that month, farm income comes from the sale of crops and livestock. The labor may precede the income by many months. The income is uncertain, the yield and price being uncertain and beyond control.

To say that a spouse should not share in crops harvested after the marriage dissolution (but planted before the dissolution) can bring about an unfair result. For example, if we decide otherwise, with both spouses working (husband farming and wife clerking), the wife's paycheck for her labors could be marital property, while the husband's labors during the same period of time would be nonmarital. We conclude that the trial court could consider that growing crops may have a value when determining marital property division.

Next, respondent claims the trial court's award of $25,000 worked a substantial injustice by virtually eliminating his 1993 income. As proof, the following exhibit was attached to respondent's post-trial motion:

*"PAUL MOHR ESTIMATED 1993 INCOME (FROM 1992 CROP)*

| | |
|---|---|
| Sale of Grain | $75,500 |
| Co-op distributions, ag program payments and other farm income | 8,700 |
| Gross Farm Income | $84,200 |
| Less Farm expenses (excluding depreciation) | (38,200) |
| Net Farm Profit | $46,000 |
| Other income (interest, emb. rv. comm.) | $ 1,500 |
| Total Gross Income | $47,500 |
| Total Tax (state, federal and self-employment) | (13,000) |
| Net Income | $34,500 |
| Less Payment to Martha for 1992 crop, per Judgment Order | (25,000) |
| Less maintenance payments to Martha per Judgment Order | ( 9,000) |
| Total Income Remaining to Paul Mohr | $ 500." |

■ The trial court found that respondent had income and assets sufficient to allow him to live in a comfortable lifestyle, even while assisting petitioner in meeting her needs. We regard the trial court's award of $25,000 from the farm income to be a division of marital property according to the dictates of section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1991, ch. 40, par. 503(d)). It appears that each party worked during the marriage and that petitioner, according to the findings of the trial court, contributed more than her share to the Champaign County residence used during the cohabitation. Dissipation seems insignificant as an issue. Both parties had nonmarital property, but respondent's was

more likely to produce sufficient income. The petitioner's lower income and health problems are probably offset by respondent's additional age. The trial court's March 15, 1993, order sets forth the assets and income available to both parties, and we will not repeat them here. The trial court's findings concerning the allocation of marital property will not be reversed absent an abuse of discretion. (*In re Marriage of Hazel* (1991), 219 Ill. App. 3d 920, 922, 579 N.E.2d 1265, 1267.) We find no abuse of discretion.

Next, respondent contends that in setting the level of maintenance the trial court improperly considered two factors: his oral prenuptial promise to support petitioner for the rest of her life, and the fact that petitioner gave up a certain level of maintenance from a previous divorce settlement. Petitioner relinquished monthly support of $1,000 from her previous marriage and was awarded $750-per-month maintenance in the present case. In its order, the trial court listed 29 factors relevant to the apportionment of the parties' marital estate. While the level of support petitioner received prior to the marriage is included in this list, no mention is made of the oral prenuptial promise of support. Petitioner contends this issue is waived because the oral promise is not mentioned in respondent's post-trial motion. Regardless of waiver, we find no evidence that the court relied upon this promise in setting the level of maintenance.

In regard to petitioner's previous level of maintenance from her prior divorce settlement, respondent cites *Duttenhofer v. Duttenhofer* (Fla. 1985), 474 So. 2d 251, for the principle that a trial court may not consider premarital sacrifices in its determination of alimony. The decision to forfeit a widow's benefits is one which rests solely with the prospective wife. By assenting to marriage, the husband and wife undertake to support one another, not to be the guarantors of all about-to-be cancelled debts due the other from a prior marriage. (*Duttenhofer*, 474 So. 2d at 254.) Our court has held that the permanent maintenance petitioner relinquished upon her subsequent marriage can be considered in determining maintenance. *In re Marriage of Martin* (1992), 223 Ill. App. 3d 855, 863, 585 N.E.2d 1158, 1164.

Respondent attempts to distinguish *Martin* on grounds that the focus in that decision is whether permanent or limited maintenance was appropriate under the circumstances. In the present case, the issue is the level of permanent maintenance. Moreover, if the trial court utilizes the fact and amount of maintenance from a prior dissolution order in awarding maintenance in a subsequent case, the standard of living upon which the judgment is based relies on circumstances where the parties were not even married. This, respon-

dent argues, is improper as the court, in setting the level of maintenance, should focus upon the standard of living established during the marriage. (See *In re Marriage of Krupp* (1990), 207 Ill. App. 3d 779, 793, 566 N.E.2d 429, 437.) *Martin* makes clear that in awarding maintenance, courts have wide latitude in considering what factors should be used in determining reasonable needs, and the trial court is not limited to the factors listed in the governing statute. See Ill. Rev. Stat. 1991, ch. 40, par. 504(b).

■ Finally, respondent questions the soundness of our decision in *Martin*, which relied upon *In re Marriage of Carney* (1984), 122 Ill. App. 3d 705, 462 N.E.2d 596, as the basis of its decision. Respondent points out that *Carney* was a highly unusual case involving a remarriage to the same woman. The wife in *Carney* gave up $24,000 per year in permanent maintenance when she remarried the same man. When this second marriage failed, the trial court denied permanent maintenance and limited the award to $30,000 per year for five years. Therefore, it was the possibility of manipulation that made the wife's foregoing of an earlier award of permanent maintenance relevant to a determination whether she should receive maintenance in the subsequent dissolution. Respondent's argument is well taken. In light of the apparent insignificant emphasis by the trial court on the previous maintenance, however, we decline the opportunity to reject or distinguish *Martin*.

Petitioner cross-appeals the trial court's award of maintenance, claiming it is too low. Respondent contends no maintenance should be given where the marriage is so short. Petitioner claims the evidence establishes that she is not living close to the standard of living she enjoyed during the marriage. Furthermore, even with the additional $10,000 in interest income she now receives as the result of an inheritance, petitioner contends she is making less now than she did prior to the marriage. Evidence established that petitioner has developed a back condition which lessens her ability to work. She is presently employed part-time as a sales clerk, earning $120 to $150 per week. She requests her level of maintenance be increased to $1,000 per month.

"Section 504(b) of the Act sets forth seven relevant factors for the trial court to consider when making a determination of the amount and duration of a maintenance award. These factors are (1) the financial resources of the party seeking maintenance, including his or her marital property; (2) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment; (3) the standard of living established during the marriage; (4) the duration of the

marriage; (5) the age and physical and emotional condition of both parties; (6) the ability of the spouse paying maintenance to meet his or her needs while meeting those of the spouse seeking maintenance; and (7) the tax consequences of the property division of the parties. (Ill. Rev. Stat. 1989, ch. 40, par. 504(b).) No one factor is determinative of the issue concerning the propriety of the maintenance award once it has been determined that an award is appropriate. (*In re Marriage of Jones* (1989), 187 Ill. App. 3d 206, 543 N.E.2d 119.)" *Martin*, 223 Ill. App. 3d at 861-62, 585 N.E.2d at 1163.

■ In considering the financial resources of the parties, the trial court was required to consider the age of the respondent and his testimony concerning retirement in the near future. When retirement occurs, income from the 300 rented acres ends. While farm equipment will be sold, it is apparent the overall income will decrease. We certainly cannot suggest that one nearing the age of 65 is out of line in considering retirement. This case is also an example of why great weight should not be given to prior maintenance. The income of the former spouse, a physician, could have been well above that of respondent.

An award of maintenance is within the sound discretion of the trial court and should not be reversed unless it constitutes an abuse of discretion or is against the manifest weight of the evidence. (*In re Marriage of Courtright* (1989), 185 Ill. App. 3d 74, 76-77, 540 N.E.2d 1027, 1029.) We find no abuse of discretion in the trial court's award.

Petitioner also claims the trial court erred in failing to award an additional $20,000 to equalize the living expenses pursuant to the antenuptial agreement. Evidence established that petitioner paid approximately $106,000 toward living expenses, as compared to respondent's $66,000. During the marriage, respondent explained to petitioner that he was investing his share of the money in their retirement. Later, petitioner discovered that the retirement accounts were all under respondent's name. Respondent contends the trial court has already considered this factor in its award.

■ The order of the trial court establishes that it considered the difference in contribution for family expenses. It is apparent the award of marital assets was affected by the difference in contributions. We determine the trial court did not abuse its discretion in allocating marital property as well as determining maintenance.

Affirmed.

McCULLOUGH, P.J., and COOK, J., concur.