NO. 4-01-0951

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

In re: the Marriage of:

JEROLD S. CULP,

          Petitioner-Appellant,

          and

SUSAN K. CULP,

          Respondent-Appellee.

)

)

)

)

)

)))

Appeal from

Circuit Court of

Vermilion County

No. 99D56

Honorable

Joseph P. Skowronski,

Judge Presiding.

_________________________________________________________________

JUSTICE KNECHT delivered the opinion of the court:

In February 1999, petitioner, Jerold S. Culp (Jerry), filed for dissolution of his marriage with respondent, Susan K. Culp.  In June 1999, the trial court in Vermilion County entered an order of dissolution, reserving jurisdiction to determine all ancillary issues.  In September 1999, the trial court entered a supplemental order incorporating the child support and maintenance provisions to which the parties had agreed.  By its terms, the maintenance was to be reviewed in July 2000, two months after the Culps' younger daughter was to graduate from high school and Jerry's child support obligation was to terminate.  In June 2001, the trial court entered an order awarding Susan permanent maintenance.  Jerry appeals, arguing the trial court abused its discretion by (1) awarding permanent maintenance, (2) setting the amount of maintenance unreasonably high, and (3) awarding maintenance retroactively
.  We affirm. 

I. BACKGROUND

The parties married in June 1975.  They have two children, Jennifer (born December 22, 1978) and Rebecca (Becky) (born February 28, 1982).  When the parties first married, Jerry was completing his training with the Illinois State Police and Susan worked full-time as a secretary.  In July 1978, Jerry graduated from the Illinois State Police Academy and began working for the Illinois State Police as a trooper.  The Culps moved from Springfield to Champaign for Jerry's job, as a result of which, Susan had to leave her job.  Because she was then pregnant with their first child, she did not return to work until both children started school.  Susan worked throughout the remainder of the marriage; however, for most of that time, she worked only part-time, devoting the remainder of her time to caring for her daughters.

During the early years of their marriage, the Culps lived in mobile homes.  In 1984, they purchased a three-acre lot  in Oakwood, Illinois, and constructed a 2,000-square-foot, three-bedroom home on it.  Jerry did most of the construction work himself.  They later added an exercise room, deck, pool, and hot tub.

In 1983, Susan began having problems with her left hip.  In 1993, she underwent a hip-replacement surgery.  Although these problems do not significantly limit her present activities, they do require ongoing medical care.  The average useful life of an artificial hip is 10 to 15 years, after which time she will need another hip replacement.  She began experiencing difficulty with her right hip as well, which, ultimately, may also require surgery. 

Jerry filed for dissolution in February 1999.  The parties sold the marital home in April 1999 and used the proceeds to pay off nearly all their marital debts.  The trial court entered an order dissolving the parties' marriage on June 4, 1999.  On September 2, 1999, the court entered a supplemental order on ancillary issues.  In it, the court ordered Jerry to pay child support of $195 per week for Becky, which was to terminate on May 31, 2000, upon her graduation from high school.  Jennifer was already in college at this time.  The order incorporated agreements of the parties, including a provision for "rehabilitative maintenance in the sum of $100 per week *** to be reviewable in July 2000 without the necessity of either party filing further pleadings."

 The trial judge originally assigned to the case notified the parties of a potential conflict of interest.  The case was reassigned.  The trial court did not hold the maintenance-review hearing until November 30 and December 5, 2000.  At that time, Susan worked as a loan processor for a bank, earning a gross income of approximately $17,000 per year.  Her job provided her with health insurance, a 401k retirement account that had accumulated $2,000, and annual raises of $500 per year.  

Susan purchased a used, two-bedroom, 1,280-square-foot mobile home but rented the lot on which it sat for $140 per month.  Becky, for whom Susan no longer received child support, lived with Susan, and Jennifer stayed with Susan most weekends.  Neither daughter contributed financially to household expenses.  Susan testified she could not afford to rent a house large enough for herself, her two daughters, and their dog.  To help make ends meet, she took on a second job, something she had never had to do during the marriage.  She began her second job on November 20, 2000, six days before the maintenance-review hearing.  Including her estimated income from the part-time job, her annual income was approximately $22,000.  She requested maintenance be increased to $1,600 per month.

Jerry received promotions in his work along with commensurate pay increases.  By the time of the maintenance- review hearing, he had risen to the rank of master sergeant and was earning a gross income of $78,000 per year with the likelihood of future promotions and pay increases.
  On March 25, 2000, he married a woman, also a master sergeant with the Illinois State Police, who earned a salary of $65,000 per year.  The couple resided in her three-bedroom, 2,300-square-foot home and pooled their funds for all living expenses.  Although Jerry no longer paid child support for Becky, he paid car, health, and life insurance premiums for both girls and helped Jennifer pay her rent at college. 

On March 26, 2001, the trial court issued a letter ruling in which it made extensive findings of fact.  The court determined the maintenance-review provision did not require Susan to file new pleadings and contained no language limiting the duration of continued maintenance or requiring Susan to file a petition to modify or prove a substantial change in circumstance.  The court expressly found the intent of the parties was "to have the [c]ourt review the entire maintenance issue in July 2000."  Additionally, the court found Jerry overstated his expenses in his financial affidavit by including expenses attributable to his second wife without including her income, and, further, Jerry's financial support obligations for Jennifer, then a senior in college, would likely terminate within a year.

On June 12, 2001, the trial court entered an order adopting the findings in its March letter ruling and awarding Susan permanent maintenance of $1,400 per month retroactive to July 17, 2000.  Giving Jerry credit for the maintenance he paid under the stipulated order, the court calculated the retroactive maintenance he owed Susan to be $9,838.72.  The order contained no payment schedule but did contain a provision stating the court would enter a supplemental order on payment of the arrearage if the parties were unable to reach an agreement on this issue.  This appeal followed. 

II. ANALYSIS

Jerry argues the trial court abused its discretion in (1) awarding permanent maintenance after the agreed-upon maintenance review, (2) awarding $1,400 per month in maintenance, and (3) ordering him to pay it retroactively to July 17, 2000.  We disagree.

The amount and duration of a maintenance award lie within the sound discretion of the trial court.  In determining both the amount and duration of maintenance, the trial court must balance the goal of encouraging the recipient to become financially independent against a realistic appraisal of the likelihood the former spouse will be able to support him or herself in some reasonable approximation of the standard of living established during the marriage.  This court will not reverse a trial court's maintenance award on appeal absent an abuse of discretion.  
In re Marriage of Cheger
, 213 Ill. App. 3d 371, 378, 571 N.E.2d 1135, 1140 (1991).

A. Duration of Maintenance

Jerry argues the trial court abused its discretion in awarding permanent maintenance because (1) it lacked the authority to modify an award of rehabilitative maintenance by making it permanent and (2) the facts of the case at bar do not justify an award of permanent maintenance.  We find both arguments unpersuasive.

1. 
Trial
 
Court's
 
Authority
 
To
 
Change
 
the
 
Character
 
of
 
the
 
Award

Jerry contends the trial court lacked the authority to modify the maintenance award to one of permanent maintenance 
sua
 
sponte
.  Under the unique circumstances of the case at bar, we disagree.

In support of his contention, Jerry cites the Second District Appellate Court's decision in 
In re Marriage of Cantrell
, 314 Ill. App. 3d 623, 732 N.E.2d 797 (2000).  In 
Cantrell
, 314 Ill. App. 3d at 625, 732 N.E.2d at 799, the dissolution order included an award of rehabilitative maintenance, reviewable after four years.  At the scheduled maintenance review, the trial court extended maintenance for two years, subject to review at the end of that time.  
Cantrell
, 314 Ill. App. 3d at 626, 732 N.E.2d at 800
.  At the maintenance-review hearing after two years had elapsed, the trial court awarded the recipient permanent maintenance despite the fact that she had merely requested a continuation of rehabilitative maintenance.  
Cantrell
, 314 Ill. App. 3d at 628, 732 N.E.2d at 801
.  The Second District vacated the award of permanent maintenance, holding the trial court had erred, among other reasons, in exceeding the relief requested in the former wife's pleadings.  
Cantrell
, 314 Ill. App. 3d at 628, 732 N.E.2d at 801-02
.  For the reasons which follow, we conclude 
Cantrell
 does not require a result other than the one reached by the trial court.

Contrary to Jerry's contention, the 
Cantrell
 court did not hold a trial court may never exceed the relief requested by parties in their pleadings; the court merely held the record in the case before it lacked circumstances to justify an award of permanent maintenance absent a request in the pleadings for such relief.  
Cantrell
, 314 Ill. App. 3d at 628, 732 N.E.2d at 801-02
.  
The 
Cantrell
 court did not need to determine what circumstances might have justified such an award because it also found the circumstances in front of it rendered even a continuation of temporary maintenance an abuse of discretion.  
Cantrell
, 314 Ill. App. 3d at 630, 732 N.E.2d at 803
.  Specifically, the former wife, who was employed only in her own money-losing photography business, had applied for only 8 to 12 full-time positions in the four years since she had completed her college degree at her former husband's expense.  
Cantrell
, 314 Ill. App. 3d at 626, 732 N.E.2d at 800
.  

By contrast, Susan works full-time and has taken on a part-time position on the side, something she never had to do during her marriage, to try to make ends meet.  In addition, she applied for two positions that would pay more than the position she now holds, despite the fact she enjoys her job.  Unlike the former wife in 
Cantrell
, Susan has exercised good faith in working to become financially independent from her former husband.
  Further, the trial court expressly found Susan's ongoing health concerns made it inadvisable for her to leave her employment to seek further education or different employment.  

In 
In re Marriage of Drury
, 317 Ill. App. 3d 201, 210, 740 N.E.2d 365, 371 (2000), this court found an award of temporary rather than permanent maintenance to be an abuse of discretion under circumstances analogous to those in the case at bar.  There, as here, the parties' marriage was one of lengthy duration (29 years), their present and future earning capacities were significantly disparate, and the former husband's earning capacity had been enhanced due to the contributions of the wife.  
Drury
, 317 Ill. App. 3d at 210, 740 N.E.2d at 371
.  We conclude, therefore, that the record before us, unlike that before the 
Cantrell
 court, justified a modification of the type of maintenance awarded.

Further, in the instant case, unlike 
Cantrell
, the stipulated order specified the maintenance was to be reviewed in July 2000 "without the necessity of either party filing further pleadings."  As such, by virtue of the parties' agreement, there were no pleadings "to circumscribe the relief the trial court [was] empowered to order."  
Cantrell
, 314 Ill. App. at 628, 732 N.E.2d at 801.
  The stipulated order did not specify whether the scheduled review was to determine solely the amount of the maintenance or both the amount and duration, and the trial court expressly found the parties intended the 
entire
 maintenance issue to be reviewed at this time.  

We conclude the agreement between the parties for Susan to receive very modest maintenance, which was labeled rehabilita-tive maintenance, was akin to an agreement for temporary maintenance, which would be thoroughly reviewed when the financial circumstances of the parties would be clear and child support had terminated.  This is consistent with the trial court's approach.

Some confusion may have arisen because of the use of the descriptive term "rehabilitative maintenance," which is time- limited maintenance.  When this term—
not found in statutory law—is used, we conclude the trial court is usually trying to provide an incentive for the recipient of maintenance to seek additional training or education or seek employment that will provide self sufficiency.

No facts or inferences here suggest Susan would meaningfully benefit from training or education or that she could obtain employment that would obviate the need for maintenance.  The evidence overwhelmingly favors an award of permanent maintenance as outlined in Judge Skowronski's careful and thorough opinion.  The trial court did not abuse its discretion by concluding the parties expected the question of maintenance would be fully and finally addressed at the review hearing, which they agreed would be conducted just 10 months after the court entered its supplemental judgment of dissolution.

When trial courts set review hearings, it would be preferable for the court to advise the parties who has the burden of going forward, who has the burden of proof, and what issues will be addressed.  For example, if time-limited maintenance—whether temporary or rehabilitative—will continue 
only
 if the recipient shows good faith in seeking education or employment or proves the need for continued maintenance, then the parties should be so advised.  Neither party should be required to guess what the court will consider at the review hearing.

If pleadings are required, that should be noted as well.  In this case, the parties agreed no further pleadings would be necessary.  The trial court concluded permanent maintenance was still an option, and we agree.

Jerry argues, however, even if the trial court otherwise had the authority to order permanent maintenance, it could not do so absent a request for permanent maintenance in Susan's attorney's closing arguments.  We have already concluded the circumstances of the instant case, unlike those present in 
Cantrell
, justify relief exceeding that requested.  This court has held a trial court may exceed the relief requested by a party as an exercise of its discretion in determining the appropriate duration of a maintenance award.  In 
Cheger
, 213 Ill. App. 3d at 380, 571 N.E.2d at 1141, we rejected the former husband's contention the trial court had erred in ordering maintenance to continue for 10 years when the former wife had only asked for a continuation of maintenance to be reviewed after 5 years.  We held the trial court had "acted within its discretion in independently determining the amount and duration of the maintenance award."  
Cheger
, 213 Ill. App. 3d at 380, 571 N.E.2d at 1141. 
 

Although 
Cheger
 involved the extension of maintenance for a period longer than that requested by the recipient rather than an award of permanent maintenance upon review, we do not find this distinction dispositive.  The distinction between "permanent" and "temporary" maintenance is a fine one, amounting, in essence, to the burden of proving a change in circumstances to justify the termination or modification of "permanent" maintenance shifting to the paying party.  See 
In re Marriage of Mayhall
, 311 Ill. App. 3d 765, 770, 725 N.E.2d 22, 26 (2000).  We conclude the trial court had the authority to order permanent maintenance after the maintenance-review hearing under the circumstances in this case. 

2. 
Propriety
 
of
 
Permanent
 
Maintenance

Jerry next contends even if the trial court did not exceed its authority in ordering permanent maintenance, it abused its discretion in doing so because the circumstances do not justify such an award.  We disagree.  Several statutorily prescribed factors justify an award of permanent maintenance.  At 24 years, the marriage was a lengthy one.  See 750 ILCS 5/504(a)(7) (West 2000).
  The parties' present and future earning capacities are greatly disparate (see 750 ILCS 5/504(a)(3) (West 2000))
, and Susan's standard of living since the dissolution is substantially lower than that enjoyed during the marriage (see 750 ILCS 5/504(a)(6) (West 2000))
.  Although Susan worked through much of the marriage, she did not work for several years when the girls were very young and then worked part-time for most of her career so she could devote her time to serving as her daughters' primary caregiver.  See 750 ILCS 5/504(a)(4) (West 2000)
.  
In lengthy marriages in which the recipient of maintenance served as caregiver for the children, "'[t]here is no question but that Illinois courts give consideration to a more permanent award of maintenance to wives who have undertaken to *** raise and support the family.'"  
Drury
, 317 Ill. App. 3d at 206, 740 N.E.2d at 368, quoting 
In re Marriage of Rubinstein
, 145 Ill. App. 3d 31, 40, 495 N.E.2d 659, 665 (1986).  We conclude the trial court properly exercised its discretion in determining permanent maintenance was appropriate.

B. Amount of Maintenance

Jerry next argues the trial court abused its discretion in setting maintenance at $1,400 per month because this amount was significantly higher than the amount of maintenance ordered in the stipulated order of September 1999 and also higher than the total amount of monthly expenses listed in Susan's financial affidavit.  He also contends in assessing Susan's income, the trial court should have imputed to her income he contends she would receive in the future for the federal earned-income tax credit.  We disagree. 

The benchmark for determining the amount of maintenance is the recipient's reasonable needs in light of the standard of living established during the marriage.  
Cheger
, 213 Ill. App. 3d at 379, 571 N.E.2d at 1140.  Susan's financial affidavit reflects her actual expenditures since the dissolution at a standard of living significantly lower than she enjoyed during the marriage.  During the marriage, she lived in a three-bedroom home on three acres of land with a pool, hot tub, and exercise room.  She now resides in a two-bedroom, used mobile home on a small lot with none of these amenities.  In the latter years of the marriage, when she returned to work full-time, Susan hired a cleaning service to clean her home for her.  She now works 14 hours per week in addition to the full-time job she held during the marriage and can no longer afford a cleaning service.  Although she continues to spend money for clothes and entertainment, she spends less than she did during the marriage.  

Jerry did not ask the trial court to consider the earned-income-credit part of Susan's income either in his written argument to the court or in his posttrial motion.  He has forfeited this argument on appeal.  Further, we reject his contention on the merits.
  Had the trial court included the amount of earned-income credit Susan received on her 1999 tax return as part of her income, this would have increased her monthly income by slightly more than $200.  This amount would not allow her to live at anywhere near the standard of living established during the marriage.  Further, the trial court did take into account the income from Susan's second job, and the necessity of working a second job is itself a reduction in her standard of living.  We conclude the trial court properly exercised its discretion in determining the amount of maintenance.

C. Retroactive Maintenance

Jerry last contends the trial court abused its discretion by awarding maintenance retroactive to July 17, 2000, the date originally set for the review hearing.  In support of his contention, he cites 
In re Marriage of Martin
, 223 Ill. App. 3d 855, 585 N.E.2d 1158 (1992).  We find 
Martin
 inapposite.

In 
Martin
, 223 Ill. App. 3d at 858, 585 N.E.2d at 1161
, the trial court awarded the former wife in a short-term marriage maintenance for a period of 24 months, to be reviewed at the end of the 24-month period.  
The hearing on the former wife's petition to extend maintenance was scheduled for December 31, 1990, to coincide with the end of the period for which maintenance had been ordered; however, the hearing was continued for nearly three months because the former wife's attorney was unable to attend due to inclement weather.  
Martin
, 223 Ill. App. 3d at 860, 585 N.E.2d at 1162.  The trial court denied her request to extend maintenance.  
Martin
, 223 Ill. App. 3d at 860, 585 N.E.2d at 1162.
  

On appeal, in addition to her claim the trial court had erred in denying her petition, the former wife contended she was entitled to payments of maintenance 
under
 
the
 
original
 
order
 for January, February, and March 1991.  
Martin
, 223 Ill. App. 3d at 860, 585 N.E.2d at 1162.
  This court framed the issue presented as follows:  "whether the right to receive maintenance extends beyond the time period stated in the court's order."  
Martin
, 223 Ill. App. 3d at 861, 585 N.E.2d at 1163
.  We held it did not.  
Martin
, 223 Ill. App. 3d at 861, 585 N.E.2d at 1163
.  We held, however, the trial court had abused its discretion in not extending maintenance, and we reversed and remanded for a determination of the amount and duration of maintenance.  
Martin
, 223 Ill. App. 3d at 863, 585 N.E.2d at 1164
.  
Martin
 did not address the issue of whether the trial court, on remand, would have the discretion to award the extension of maintenance retroactively to the date maintenance ended under the previous order because that issue was not presented.  We thus find 
Martin
 does not limit the trial court's discretion to award maintenance retroactively in the instant case.

Jerry further argues, however, the only authority to award maintenance retroactively comes from section 510 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/510 (West 2000)).  Section 510 authorizes and prescribes procedures for modification of permanent maintenance upon a showing of a substantial change in circumstances.  750 ILCS 5/510 (West 2000).  Because the trial court found the parties' agreement did not require such a showing and the review hearing was, therefore, not a "modification hearing," Jerry argues the statute is inapplicable and the trial court was thus without authority to award maintenance retroactively.  We disagree.  

Section 510(a) provides, in pertinent part, "the provisions of any judgment respecting maintenance or support may be modified only as to installments accruing subsequent to due notice by the moving party of the filing of the motion for modification."  750 ILCS 5/510(a) (West 2000).  Thus, the statute is not the source of a trial court's authority to modify maintenance retroactively; rather, it is a limit on the time period for which a court may do so.  

The trial court determined the September 1999 order did not require Susan to show a substantial change in circumstances as required by the statute.  Further, the order expressly negated the requirement of filing a petition to have maintenance reviewed at that time.  Thus, the statute is inapplicable.  Nevertheless, the order changed the amount of maintenance Jerry was required to pay and, as such, considerations of fairness would require the trial court to limit retroactive maintenance to a period for which he had due notice his obligations might change.  Because the supplemental order, by its terms, provided maintenance would be reviewed automatically in July 2000, and because Jerry had notice of the scheduled July 17 hearing, he had notice his maintenance obligation might change as of that time.  We conclude the trial court acted within its authority in awarding maintenance retroactively to the date the hearing was originally to occur.

 
 
 
 III. CONCLUSION

For the reasons stated, we affirm the trial court’s judgment.

Affirmed.

APPLETON and McCULLOUGH, JJ., concur.