*In re* MARRIAGE OF STEVEN W. SCHILTZ, Petitioner-Appellant, and PAMELA E. SCHILTZ, Respondent-Appellee.

Third District    No. 3—04—0618

Opinion filed July 28, 2005.

Melissa S. Barnhart, of Pilmer & Barnhart, of Yorkville, for appellant.

Vincent S. Cook, of Morelli & Cook, of Aurora, for appellee.

JUSTICE HOLDRIDGE delivered the opinion of the court:

Steven W. Schiltz petitioned the trial court to dissolve his marriage with the respondent, Pamela E. Schiltz. The trial court granted dissolution of the marriage and ordered, *inter alia*, that Steven pay Pamela permanent maintenance of $800 per month. On appeal, Steven argues that the trial court abused its discretion because (1) it awarded permanent maintenance to Pamela or, alternatively, (2) the maintenance award was excessive. We reverse and remand.

## BACKGROUND

Steven and Pamela were married on March 24, 1979. Their only child, Kristopher Schiltz, was born on August 13, 1979. Steven petitioned for dissolution of the marriage on May 14, 2003.

On December 10, 2003, the court found that grounds for the

divorce existed. The court held a trial on the remaining issues on February 25, 2004. Kristopher was emancipated at the time of trial.

At the beginning of the trial, the parties entered several stipulations. The parties agreed that Steven was the beneficiary of an annuity with Phoenix Wealth Management with a surrender value of $22,555.67 and a death benefit of $26,131.31. He also was the beneficiary of approximately $9,285 in the Midwest Operating Engineers Fund, in which he was not yet vested. The parties stipulated that Pamela's pension balance was approximately $36,000.

The parties agreed that they owned a 1992 Chevy Blazer, against which there was a loan of approximately $6,000. The couple had a 2000 Grand Prix with a loan of $6,247. They owned a 1996 boat and trailer against which there was a loan of about $10,500. The couple had a motorcycle with a loan of approximately $8,000. They owned a lawn tractor with a loan of approximately $2,400. The balance of the mortgage on their house was about $76,500.

The couple was obligated on a student loan for Kristopher with a balance of approximately $4,500. Pamela had a Menard's credit card with a balance of about $1,500. She also had a Master Card with a balance of approximately $2,450 and a Sam's Club credit card with a balance of about $900. The couple had a joint credit card through Household Finance, on which Steven was making payments, with a balance of approximately $7,300.

During the trial, Steven and Pamela were the only witnesses. Steven testified that he was 46 years old. He worked loading trucks for Boughton Trucking and Material. Steven stated that he had a high school education.

Steven said that in 1998 he earned approximately $42,000 and Pamela earned about $24,000. In 1999, he had an income of about $49,000 and she earned about $25,000. Steven earned approximately $43,000 and Pamela had an income of about $26,000 in 2000. In 2001, he had an income of about $69,000 and she earned approximately $28,500. Steven earned approximately $65,000 and Pamela had an income of about $27,000 in 2002. For 2003, he earned approximately $75,000. Pamela's 2003 W-2 form indicated that she earned $25,584.12 from her employment with Farmers Insurance. She also earned less than $500 working for Wal-Mart in 2003.

Steven described the couple's standard of living during the marriage as "average." He and Pamela took only one vacation together during the marriage.

Steven stated that he was asking for his grandmother's dining room table, buffet, and silverware from the marital home. He valued the Blazer at approximately $6,000. Steven valued the Grand Prix at

about $10,000. He estimated the value of the boat and trailer to be $10,000. Steven valued the motorcycle at approximately $8,500, and the lawn tractor at approximately $2,500.

Steven testified that $2,000 of the balance on the Household Finance credit card was caused by Kristopher forging Pamela's signature on credit card checks for that account. The remaining balance was not incurred while the couple was living together.

Kristopher also had forged more than $8,000 in checks for another credit card account. Steven had paid the balance on that account by borrowing $18,000 from Steven's mother. Kristopher had repaid Steven $3,200 of the $8,000. Steven was making monthly payments to his mother of $432. With a portion of the loan from Steven's mother, Steven helped Kristopher to purchase a 1998 Dodge Neon car that was titled in both Kristopher's and Steven's names. Steven testified that the Neon was being repossessed because Kristopher had failed to make loan payments on the car. Steven had not heard from Kristopher since October 2003.

Steven testified that the couple purchased the marital home in 1998. The mortgage payments on the home were $628 per month. They also paid rent of $300 per month for the lot on which the house was located. Steven said that he continued to make the mortgage and lot rental payments for 18 months after the couple separated. He estimated the fair market value of the house to be $110,000.

Steven stated that Pamela had not moved, changed jobs, or forgone promotions in order to advance his career. She had worked for Farmers Insurance for approximately 18 years. Pamela had worked full-time throughout the marriage.

In Steven's financial affidavit, he alleged that his monthly expenses were $3,918. He stated that at the time of trial he lived with Sandy Sheridan and her three children. Steven said that for the past year Sandy had paid for all of the food and he paid the other household expenses. Sandy works as a waitress and earns $140 every two weeks. She receives $50 per week in child support. Steven had bought Sandy an engagement ring for $1,400.

Pamela testified that she was 44 years old. She estimated the value of the Grand Prix to be $7,500. Pamela stated that she had been paying the mortgage and lot rental on the marital home since the couple separated. The monthly mortgage payments were $626.47. The monthly lot rental was $341, but it was $325 if paid early. She estimated the value of the house to be approximately $105,000.

Pamela testified that she was a clerical worker for Farmers Insurance. She paid $93 per month for her health insurance through her employer. In 2003, Pamela had made less than $500 working a second

job at Wal-Mart. Ordinarily, she made $6.25 per hour at Wal-Mart, but she made $7.25 per hour when she worked on Sundays.

Pamela used the couple's 2003 tax refund of $1,768 to replace a broken water heater in the home and to pay for lot rent and groceries. She had $2,000 in savings when Steven moved out, which was now depleted.

Pamela shared some expenses with her boyfriend, Jim Nelson. She paid $35 per month for telephone and $10 per month toward satellite television.

In her financial affidavit, Pamela asked the court for $1,000 per month in permanent maintenance. At trial, she asked the court for at least $800 per month in permanent maintenance. Pamela had borrowed $1,000 from her father and $500 from her brother.

At the conclusion of the trial, the judge systematically discussed all of the statutory factors regarding his division of the couple's assets and debts and concerning the maintenance award. The judge noted that the maintenance award was subject to modification. The court memorialized its findings in a written order issued March 12, 2004.

The court found the value of the house to be $107,500, indebted with a mortgage balance of $76,500. The equity in the house, therefore, was $31,000. The court said that Pamela could either (1) sell the house and the couple then would divide the equity equally; or (2) within 90 days, Pamela could refinance the house and pay Steven $15,500 for his share of the equity.

The court awarded the following property to Steven: the motorcycle; the boat and trailer; the Blazer; the lawn tractor; and his grandmother's dining room table, silverware, and buffet. The remaining personal property in the marital home was awarded to Pamela. The court also awarded the Grand Prix to Pamela. Each party was awarded his or her pensions and annuities. The snowmobile was not mentioned in the order.

The court assigned the following debt to Steven: $8,000 for the motorcycle; $10,500 for the boat and trailer; $6,000 for the Blazer; $2,400 for the lawn tractor; $7,300 for the Household Finance credit card; $1,500 for the Menard's credit card; $4,500 for the student loan; and $18,000 for the loan from Steven's mother.

The court assigned the following debt to Pamela: $6,200 for the Grand Prix; $900 for the Sam's Club credit card; $2,500 for the Master Card; $1,000 for the loan from Pamela's father; and $500 for the loan from Pamela's brother.

The court ordered Steven to pay permanent maintenance of $800 per month to Pamela. Steven appealed.

## ANALYSIS

Steven contends that the trial court abused its discretion because (1) it awarded permanent maintenance to Pamela or, alternatively, (2) the maintenance award was excessive.

■ Under the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/101 *et seq.* (West 2002)):

> "[T]he court may grant a temporary or permanent maintenance award for either spouse in amounts and for periods of time as the court deems just *** in gross or for fixed or indefinite periods of time *** after consideration of all relevant factors, including [12 enumerated factors]." 750 ILCS 5/504(a) (West 2002).

Steven contends that the court failed to take the following factors into account:

> "(1) the income and property of each party ***;
>
> (2) the needs of each party;
>
> (3) the present and future earning capacity of each party;
>
> * * *
>
> (6) the standard of living established during the marriage;
>
> (7) the duration of the marriage;
>
> (8) the age and the physical and emotional condition of both parties; [and]
>
> ***
>
> (10) contributions and services by the party seeking maintenance to the education, training, career or career potential, or license of the other spouse[.]" 750 ILCS 5/504(a)(1), (a)(2), (a)(3), (a)(6), (a)(7), (a)(8), (a)(10) (West 2002).

In awarding maintenance, the trial court has wide latitude to consider the needs of the parties and is not limited to the factors enumerated in section 504. *In re Marriage of Mohr*, 260 Ill. App. 3d 98, 631 N.E.2d 785 (1994). A maintenance award is within the sound discretion of the trial court and will not be disturbed on appeal unless the trial court abused its discretion. *Mohr*, 260 Ill. App. 3d 98, 631 N.E.2d 785.

■ A trial court should award permanent maintenance where a spouse is not employable or is employable only at a low income as compared to her previous standard of living. *In re Marriage of Selinger*, 351 Ill. App. 3d 611, 814 N.E.2d 152 (2004). There is a trend in Illinois toward awarding permanent maintenance to a spouse who has raised children and has supported the family and who has lost or has been substantially impaired in maintaining skills for continued employment while the other spouse was obtaining an education and becoming established in a profession. *In re Marriage of Rubinstein*, 145 Ill. App. 3d 31, 495 N.E.2d 659 (1986).

■ In the present case, we rule that the trial court abused its

discretion by awarding permanent maintenance to Pamela. She is employable at a level comparable to her previous standard of living. Furthermore, Pamela was not a spouse whose life matched the trend noted in *Rubinstein*. Therefore, an award of permanent maintenance was inappropriate in this case.

Alternatively, the purpose of rehabilitative maintenance is to provide an incentive for the spouse receiving support to use diligence in procuring training or skills necessary to attain self-sufficiency. *Selinger*, 351 Ill. App. 3d 611, 814 N.E.2d 152.

In this case, the trial court's award of permanent maintenance provided Pamela with little incentive to procure training or skills to attain self-sufficiency. However, rehabilitative maintenance would provide Pamela with such an incentive. See *Selinger*, 351 Ill. App. 3d 611, 814 N.E.2d 152.

Because we reverse the trial court's award of permanent maintenance, we need not consider Steven's alternative argument that the maintenance award was excessive.

## CONCLUSION

For the foregoing reasons, we reverse that portion of the La Salle County circuit court's order awarding permanent maintenance to Pamela and remand the matter for further proceedings.

Reversed and remanded.

BARRY and O'BRIEN, JJ., concur.