NOTICE
Decision filed 12/27/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 200263-U

NO. 5-20-0263

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| MELISSA DICKINSON, | ) | Williamson County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | No. 18-D-165 |
| | ) | |
| DAVID DICKINSON, | ) | Honorable |
| | ) | Brad K. Bleyer, |
| Respondent-Appellant. | ) | Judge, presiding. |

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Welch and Cates concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's judgment for distribution is affirmed where the trial court's property distribution, awards of maintenance, and educational expenses were not abuses of the discretion; however, we amend the maintenance termination date from April 30, 2035, to April 30, 2034, *nunc pro tunc*.

¶ 2    Respondent, David Dickinson, appeals the trial court's judgment for distribution contending the trial court abused its discretion by attributing over $150,000 he removed from the parties' joint Vanguard account solely to him, by awarding petitioner statutory maintenance and child support that exceeded one-half of David's monthly net income, and prematurely awarding educational expenses that required David to pay 50% of the expenses. For the following reasons, we affirm.

1

¶ 3                                    I. BACKGROUND

¶ 4      David and Melissa Dickinson were married on September 2, 1999. Eight children were born of the marriage with the oldest born in 2000 and the youngest born in 2017. During the marriage, David completed his education and became a podiatrist, while Melissa stayed at home and homeschooled the children. On June 20, 2018, Melissa filed a petition for dissolution of marriage. The trial court granted Melissa's petition for temporary relief which allowed Melissa to stay in the marital home and ordered David to pay Melissa $8500 a month for maintenance and child support. On September 17, 2018, a guardian *ad litem* was appointed, and on March 18, 2019, a section 604.10(c) (750 ILCS 5/604.10(c) (West 2018)) evaluation report was filed. A two-day hearing was held on August 28 and August 29, 2019. On October 30, 2019, the parties entered into a final parenting plan and judgment providing Melissa with residential custody of the seven minor children along with parental responsibility for education and medical care of the children. The dissolution of marriage was also granted as of October 30, 2019, via the trial court's November 14, 2019, judgment.

¶ 5      Testimony at the August hearing revealed that during the pendency of the proceedings David left the marital home, purchased a new home, purchased a vehicle, changed jobs, and made numerous withdrawals from the parties' joint Vanguard account that amounted to approximately $158,000. David's testimony revealed that he used a portion of the money as a down payment on his new residence, purchased a 2005 Honda Pilot, furnished his home with furniture and beds for the children, and purchased, *inter alia*, a television, a computer, a palm pilot, a scooter, a video game console, a dune buggy, camping equipment, and bicycles for his new home. David also testified that he used a portion of the money to pay maintenance to Melissa when his prior employer did not pay him for three months. He further testified that he also used the funds to

2

purchase malpractice insurance; fund two accounts for Melissa, one for repairs on the marital home and the other to pay bills; and as payment for litigation fees and costs associated with the divorce.

¶ 6    On February 20, 2020, the trial court issued a judgment for distribution which awarded the mortgage-free marital home with a fair market value of $202,000 to Melissa and David's new home with $50,000 equity to David. The court found that David was advanced marital funds during the pendency of the proceedings and "this advance negates any discrepancy between the values of the real estate and the furnishings awarded." Melissa was awarded the 2015 Nissan NV, the 1999 Ford F-250, the 2011 Honda Odyssey, and the 2008 Honda Fit that had a total value of $29,000.[1] David was awarded the 2010 Toyota Camry and 2005 Honda Pilot that had a total value of $10,929. The trial court listed marital financial accounts totaling $772,700 and divided the amounts equally between the parties. The trial court also ordered the parties, after any amount in a child's Brightstart 529 college account was expended, to split any remaining college expenses with Melissa and the child each paying 25% of the expenses and David paying 50% of the expenses. The parties were directed to tender a stipulated agreement regarding any other personal property and each party was assigned their own credit card debt.

¶ 7    Thereafter, the trial court found the parties were married for 18 years, 9 months (225 months) and applied the statutory factor of .76. After noting David's net monthly income of $16,919 and Melissa's lack of income, the court awarded Melissa statutory maintenance of $5640 effective February 1, 2020, until 171 months were paid. Maintenance would terminate "after all current, timely payments to Melissa have been made for a period of 14.25 years, through April 30, 2035." The trial court also noted that David's child support was $2935 effective February 1, 2020.

---

[1]The parties submitted Joint Exhibit A which listed their assets and the estimated values of those assets.

David was ordered to pay $25,000 towards Melissa's attorney fees, and any other outstanding costs associated with the litigation would be split equally. David was to receive any refunds due from the 2018 federal ($11,937) and state ($676) tax returns and was allowed to claim each of the minor children on his taxes. David was also awarded $30,000 in nonmarital funds. Finally, David's lawsuit against his prior employer, if paid, would be split equally, after payment of attorney fees and costs, between the parties. On March 19, 2020, David filed a motion for reconsideration, which was denied by the trial court in a docket entry dated July 31, 2020. David timely appealed on August 28, 2020.

¶ 8                                   II. ANALYSIS

¶ 9     On appeal, David contends that the trial court erred in its allocation of property by finding that he was advanced over $150,000 in marital funds during the pendency of the proceedings and "this advance negates any discrepancy between the values of the real estate and the furnishing awarded" because attributing these funds double counted some of the assets against David and created a windfall for Melissa. David also contends that the trial court erred in both the amount and duration of Melissa's maintenance, because the maintenance amount combined with the child support equated to more than 50% of David's net income. David additionally argues the maintenance should terminate on April 30, 2034, not April 30, 2035, and the trial court erred by not crediting David with the temporary maintenance and child support paid during the pendency of the proceedings. Finally, David argues that the trial court erred in allocating the college expenses of the minor children, contending the issue was premature because the trial court could not consider the income, obligations, and assets of the parties, at the time the younger children would attend college. Melissa requests affirmation of the trial court's judgment for distribution.

4

¶ 10                           A. Property Distribution

¶ 11    "Distribution of marital property is a matter within the discretion of the trial court." *In re Marriage of Hamilton*, 2019 IL App (5th) 170295, ¶ 34. "On appeal, we will not disturb the court's distribution of assets absent an abuse of discretion." *Id*. "An abuse of discretion occurs where no reasonable [person] would take the view adopted by the trial court." *In re Marriage of Carpenter*, 286 Ill. App. 3d 969, 973 (1997). " '[T]he touchstone of proper apportionment is whether it is equitable in nature,' " and each case rests on its own facts. *In re Marriage of Heroy*, 385 Ill. App. 3d 640, 661 (2008) (quoting *In re Marriage of Drury*, 317 Ill. App. 3d 201, 211 (2000)). An equitable division does not necessarily mean an equal division, and "one spouse may be awarded a larger share of the assets if the relevant factors warrant such a result." *In re Marriage of Henke*, 313 Ill. App. 3d 159, 175 (2000).

¶ 12    The statute provides 12 relevant factors to consider when dividing the marital property in "just proportions." 750 ILCS 5/503(d) (West 2018). "A reviewing court applies the manifest weight of the evidence standard to the factual findings for each factor on which a trial court may base its property disposition ***." *In re Marriage of Vancura*, 356 Ill. App. 3d 200, 205 (2005). However, here, David does not argue that the trial court ignored or misinterpreted any of the statutory factors. Instead, David argues that there was insufficient evidence presented at trial for the court to find that over $150,000 was used solely by David during the pendency of the divorce and, even if there was sufficient evidence, the trial court's property disposition double counted some of the assets to David's detriment and Melissa's favor.

¶ 13    We disagree with David's argument regarding the sufficiency of the evidence supporting the $150,000. While $15,000 was removed prior to the filing of the divorce petition, this amount was removed after Melissa requested and received the order of protection filed in advance of the

5

dissolution proceeding. In any event, the amount is *de minimis* when considered in conjunction with the remaining funds David removed from the Vanguard account and the total value of the marital estate. David's testimony revealed that he alone removed the money and transferred the funds to his personal checking accounts. We note that little underlying documentation was submitted in support of where the money was spent, but according to David's testimony, $30,000 was used as a down payment on his new house, $12,000 was used to purchase the 2005 Honda Pilot, $30,000 was placed in an account to be used for repairs on the marital home, $20,000 was used to pay his malpractice insurance, and $11,000 was placed in a joint account to pay bills. David concedes on appeal that "only $52,424.86 was unaccounted for" and now claims this amount was used to pay the costs of litigation, including attorney fees, GAL fees, and the custodial evaluation, as well as maintenance to Melissa when David was not paid by his employer.

¶ 14    What is not mentioned by David on appeal is what was listed in his March 19, 2019, financial affidavit and his testimony regarding same. The affidavit claimed that David spent $9144.06 in personal expenses listed under "other," which included a headset, phone, pens, palm pilot, planner, computer, and monitor. When questioned about this entry, David stated that he took the total costs for these items over three months and divided them by three to reach this amount. Therefore, based on David's testimony, he spent $27,432.18 on electronic equipment for his personal use. David also testified that he spent a little less than $9000 replacing the heating and air conditioning unit at his new house and purchased a $2000 scooter, a $200-300 television, beds, mattresses, bookshelves, books, electronic equipment, camping equipment, games, and bicycles for the children to use at his home. Although a value was not provided for each item, the values provided, including those related to his litigation expenses, amount to $60,700 and further reveal that David spent at least $200,000 in the 20 months after he left the marital residence on his own

6

personal liabilities and enjoyment. As such, the evidence was sufficient to support the trial court's finding that David was advanced marital funds during the pendency of the proceedings, and this finding is not against the manifest weight of the evidence.

¶ 15    David also contends that even if the evidence sufficiently supported the advanced marital funds, the trial court's attribution of approximately $150,000 of these funds was an abuse of discretion because the attribution resulted in "double counting" which favored Melissa and was unfair to David. Double counting occurs when the value of a marital asset is counted twice. *In re Marriage of Schacht*, 343 Ill. App. 3d 348, 352 (2003) (citing *In re Marriage of Talty*, 166 Ill. 2d 232, 236 (1995)). Here, David claims that the trial court's attribution of over $150,000 results in double counting because the $30,000 used as a down payment on the house and the $12,000 used to purchase the Honda Pilot were counted twice. However, the record reveals that David spent at least $200,000 during the pendency of the proceedings, and therefore, the $42,000 paid toward his house and car may not have been included in the $150,000 attributed to David.

¶ 16    David also claims that the $30,000 put into the account for repairs of the marital home, the $11,000 placed into a joint account to pay bills, and the $20,000 paid to his malpractice carrier should not have been attributed solely to him but equally attributed to both parties because there was no notice of dissipation filed by Melissa. However, David provides no argument or reasoning *why* it was an abuse of discretion for the trial court to attribute the funds solely to him when he was the party who removed the funds from the Vanguard account, he was the sole income producer during the marriage, and Melissa had no current or future employment prospects due to her continued homeschooling of the minor children.

¶ 17    The statute does not require the trial court's distribution to be equal, only equitable, and it is well-settled that a distribution may provide a larger share to the non-income-producing spouse

7

and still be equitable. See *In re Marriage of Romano*, 2012 IL App (2d) 091339, ¶¶ 122, 124 (affirming distribution of marital estate with 23% to Daniel and 77% to Cynthia); see also *In re Marriage of Henke*, 313 Ill. App. 3d at 175-77 (affirming distribution of marital estate with 30% to Marvin and 70% to Adele). Here, without the attribution of the $152,000, David received 43% of the marital assets and Melissa received 57%. With the trial court's attribution, the parties each received 50% of the marital property. While David contends it was inequitable to attribute some of the amounts solely to him, he fails to explain why such division would be inequitable when the trial court's decision resulted in David receiving $10,823.07 back from the $30,000 home repair account, the full amount of the $12,600 refund from the 2018 taxes in addition to his retention of the $30,000 account containing his nonmarital funds. As such, we find that the trial court's property distribution was not an abuse of discretion and affirm the distribution.

¶ 18                           B. Maintenance and Child Support

¶ 19    A maintenance award will not be disturbed on appeal absent an abuse of discretion. *In re Marriage of Schiltz*, 358 Ill. App. 3d 1079, 1084 (2005). Here, there is no dispute that the trial court's award of maintenance ($5640) and child support ($2935.90) were correctly calculated pursuant to the statute. Instead, David argues that the trial court erred by not deviating from the statutory amount to reduce the amount of his maintenance since the combined amount of child support and maintenance was over 50% of his net income and further erred by failing to credit him the amount of maintenance paid during the pendency of the proceedings. Finally, David argues that the trial court erred by setting the termination date of the maintenance as April 30, 2035, instead of April 30, 2034.

¶ 20    Section 504 of the Illinois Marriage and Dissolution of Marriage Act (Act) provides guidelines for determining the amount and duration of maintenance. It states, *inter alia*, "If the

8

application of guideline maintenance results in a combined maintenance and child support obligation that exceeds 50% of the payor's net income, the court may determine non-guideline maintenance in accordance with paragraph (2) of this subsection (b-1), non-guideline child support in accordance with paragraph (3.4) of subsection (a) of Section 505, or both." 750 ILCS 5/504(b-1) (West 2018).

¶ 21    "The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent." *Nowak v. City of County Club Hills*, 2011 IL 111838, ¶ 11. The intent should be determined primarily by examining the plain and ordinary meaning of the statutory language. *Lucas v. Lakin*, 175 Ill. 2d 166, 171 (1997). "Whether a statutory provision is mandatory or merely directory depends upon the intent of its drafters." *People v. Reed*, 177 Ill. 2d 389, 393 (1997). "An important aid in determining legislative intent is the nature of the auxiliary verb used in the statute." *Id*. "Legislative use of the word 'may' is generally regarded as indicating a permissive or directory reading, whereas use of the word 'shall' is generally considered to express a mandatory reading." *Id*. A statute should be read with all relevant parts considered. *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990). Our interpretation of this section, which used the word "may," allows a trial court to deviate from the statutorily calculated maintenance but does not require the deviation. As such, we continue our review to determine if the trial court abused its discretion by failing to deviate from the statutory guidelines.

¶ 22    Here, the trial court found the parties were married for 225 months and used the statutory factor of .76 to determine the duration of maintenance at 171 months. The court noted that throughout "the entirety of their marriage, while eight (8) children were born to the marriage, Melissa remained at home, and was the children's primary caregiver, homeschooling the children." The court noted that Melissa had no outside source of income, and it would be unreasonable to

impute income to her since she continued to homeschool the children and the youngest was only two years old. The court further found that David was the sole income earner. Thereafter, the court stated that "[g]iven the significant disparity of income between Melissa and David," David was to pay $5640 in statutory maintenance for 171 months (14.25 years) beginning February 1, 2020, and terminating on April 30, 2035.

¶ 23 David does not argue that an award of maintenance was inappropriate. Instead, David claims the maintenance amount should have been reduced, claiming the award creates a windfall for Melissa because her award ($8575.90) exceeded her monthly living expenses ($7414.71). In support, David cites *In re Marriage of Nord*, 402 Ill. App. 3d 288, 293 (2010), contending the trial court should consider the reasonable needs of the recipient of the support while taking into consideration the living established during the marriage.

¶ 24 We agree with the premise in *Nord* but find David's factual argument lacking. First, nothing in David's argument addressed the trial court's findings related to Melissa's lack of current or future income, his own income as a podiatrist, or the disparate income difference between the parties. Second, while Melissa's June 18, 2018, financial affidavit listed her total monthly living expenses as $7414.71, Melissa's more recent August 27, 2019, financial affidavit listed her total monthly living expenses as $8587.71. By awarding Melissa the statutory amount, Melissa is close to meeting her monthly expenses, which is extremely relevant considering that she has no income other than David's maintenance payment.

¶ 25 Conversely, David's August 30, 2018, financial affidavit revealed $5227 in available monthly income after David's monthly expenses, including maintenance and child support, were paid. While David's February 28, 2019, financial affidavit contended his total income available each month was a deficit of $11,250.77, his testimony revealed that numerous items set forth in

10

the later financial affidavit were not recurring monthly expenses or contained erroneous amounts. These items included the $9144.06 for electronic equipment and legal fees, $2016.23 for tuition paid out of the Brightstart 529 account, a reduction in the monthly amount for FICA from $1628.77 to $686.65, and $1002.37 for extracurricular activities which primarily involved one-time purchases of recreational equipment for the children while they were at his home. Considering David's testimony, in conjunction with the trial court's maintenance and child support award, David would have at least $1778.11 remaining after payment of his monthly financial responsibilities and living expenses. As such, we find the trial court did not abuse its discretion in awarding Melissa the statutory amount for maintenance despite the amount being more than 50% of David's net income.

¶ 26    David also argues that the trial court erred by failing to credit him with the amounts of maintenance previously paid during the pendency of the proceedings. The relevant statutory provisions states, "In the discretion of the court, any term of temporary maintenance paid by court order under Section 501 may be a corresponding credit to the duration of maintenance set forth in subparagraph (b-1)(1)(B)." 750 ILCS 5/504(b-1)(1.5) (West 2018). Here, David contends the trial court "should have made the 171 months of maintenance effective [in] November of 2018" when David began paying temporary maintenance to Melissa but provides no argument and cites no case law in support of the position.

¶ 27    Illinois Supreme Court Rule 341(h)(7) states that the argument section of an appellant's brief "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on. *** Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Under Rule 341(h)(7), the reviewing court is entitled to have clearly defined

11

issues presented with cohesive argument and pertinent authority. *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993). An appellant forfeits any contention that is not supported by argument or by citation to authority. *Id*. As such, pursuant to Rule 341(h)(7), we find this issue was forfeited and affirm the trial court's effective date for the maintenance period as February 1, 2020.

¶ 28    David also argues that even if the duration is affirmed, the termination date is incorrect because 171 months from the effective date of February 1, 2020, would be April 30, 2034, not April 30, 2035. No argument to the contrary was provided by Melissa, and therefore, we find that the trial court's use of the 2035 date was a clerical error. "The function of a *nunc pro tunc* order is merely to correct the record of the judgment and not to alter the judgment actually rendered." *Dauderman v. Dauderman*, 130 Ill. App. 2d 807, 809 (1970). As such we amend the trial court's judgment setting the termination date of April 30, 2035, *nunc pro tunc*, to April 30, 2034.

¶ 29                          C. Educational Expenses

¶ 30    Finally, David argues that the trial court's allocation of college expenses for all the parties' minor children was premature and was error because the allocation could not consider the income, obligations, and assets of the parties at the time of judgment as required by section 513 of the Act. 750 ILCS 5/513 (West 2018). Section 513 states:

> "In making awards under this Section *** the court shall consider all relevant factors that
>
> appear reasonable and necessary, including:
>
>      (1) The present and future financial resources of both parties to meet their needs,
>
> including, but not limited to, savings for retirement.
>
>      (2) The standard of living the child would have enjoyed had the marriage not been
>
> dissolved.
>
>      (3) The financial resources of the child. [and]

12

(4) The child's academic performance." *Id.* § 513(j)(1)-(4).

¶ 31    The trial court's award of educational expenses is reviewed for an abuse of discretion. *In re Marriage of Budorick*, 2020 IL App (1st) 190994, ¶ 83. "A trial court abuses its discretion only where no reasonable person would take the view adopted by the trial court." *In re Marriage of Schneider*, 214 Ill. 2d 152, 173 (2005).

¶ 32    First David argues that the trial court failed to consider the factors found in section 513. In support, David claims "[n]othing in the determination *** shows that the Trial Court considered the substantial payment the Husband was paying to Wife for maintenance, the assets awarded to the parties, the home without a mortgage awarded to Wife, the need for Husband to start over, incur a mortgage and buy a home, and the substantial payment for child support from Husband to Wife." David further contends that, economically, Melissa "has more net income than [David] with no debts and an investment portfolio," while David must "pay double the amount of the educational expenses of the children at 50% of all costs."

¶ 33    We disagree with David's claim that the trial court ignored the statutory factors. The purpose of the educational expense provision "is to authorize a discretionary award *** to guarantee that funds are available if the need arises." *In re Marriage of Dieter*, 271 Ill. App. 3d 181, 190 (1995). Here, there was no dispute that David was the sole income earner and Melissa's opportunity to earn income in both the present and future was hampered by the fact that she would continue to homeschool the minor children, the youngest being 2½ years old at the time the judgment was rendered. As such, the present and future earnings of the parties at the time most of the children would attend college was known and addressed by the court. Further, while David claimed that Melissa's net income was greater than his, based on the financial affidavits and David's testimony, Melissa had no income after paying her expenses, while David had income

13

remaining after all his expenses were paid. David's testimony revealed his belief that all the children were college candidates based on their intelligence, his desire for all the children to attend college, and his preference that each child have some responsibility in paying for college. Given the financial disparity between the parties, as well as David's desire for the children to attend college, we cannot say the trial court abused its discretion in requiring David to contribute more than Melissa or the child toward each child's college education.

¶ 34    Finally, David claims the trial court's allocation of education expenses for the children who had not yet entered primary school was improper as there was no ability for the trial court to ascertain the future costs of postsecondary education, the income/assets of the child, nor the financial abilities of the parties to pay said funds at that time. We note, however, that the record reveals that no such argument was ever presented to the trial court. Arguments not raised in the trial court are generally forfeited on appeal. *U.S. Bank Trust, N.A. v. Colston*, 2015 IL App (5th) 140100, ¶ 20. We further note that David never objected to the trial court's authority to address the children's educational expenses, conceded the trial court had "the authority to direct the support of the children provided they complied with [the] requirements under 750 ILCS 5/513," and thereafter requested the trial court split any educational expenses after exhaustion of a child's 529 account "in equal thirds between mother, father, and the student." " 'It is fundamental to our adversarial process that a party waives his right to complain of an error where to do so is inconsistent with the position taken by the party in an earlier court proceeding.' " *McMath v. Katholi*, 191 Ill. 2d 251, 255 (2000) (quoting *Auton v. Logan Landfill, Inc.*, 105 Ill. 2d 537, 543 (1984)). "A party cannot complain of error which he induced the court to make or to which he consented." *Id.* Based on David's concessions before the trial court, we find this issue forfeited.

¶ 35                                    III. CONCLUSION

¶ 36    For the reasons stated herein, we affirm the trial court's property disposition and its awards

of maintenance and educational expenses and amend the trial court's April 30, 2035, maintenance

termination date, *nunc pro tunc*, to April 30, 2034.


¶ 37    Affirmed in part and amended in part.