2025 IL App (1st) 221559-U

FIRST DISTRICT,
SIXTH DIVISION
March 7, 2025

No. 1-22-1559

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| SANDY BIANGARDI, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | Cook County, Illinois. |
| | ) | |
| v. | ) | No. 2014 D 9265 |
| | ) | |
| MICHAEL BIANGARDI, | ) | Honorable James Kaplan and |
| | ) | Honorable Lori Rosen, |
| Respondent-Appellee. | ) | Judges Presiding. |

JUSTICE GAMRATH delivered the judgment of the court.
Justices Hyman and C.A. Walker concurred in the judgment.

**ORDER**

¶ 1     *Held*: In dissolution of marriage proceeding, trial court abused its discretion in not awarding permanent maintenance to wife but acted within its discretion in setting the amount of maintenance, dividing the parties' assets, and barring undisclosed witnesses and exhibits at trial.

¶ 2     In 2014, Sandy Biangardi filed a petition for dissolution of marriage from her husband, Michael Biangardi. In 2020, the trial court entered a judgment dissolving the parties' marriage and awarding Sandy $4500 in monthly maintenance for the next two years but reserving certain property issues. In 2022, the trial court entered a final supplemental judgment resolving the

remaining issues. Sandy now appeals both judgments, raising numerous contentions of error regarding the court's award of maintenance, division of assets, and various evidentiary rulings during and after trial. We affirm in part, reverse in part, and remand.

¶ 3                                    I. BACKGROUND

¶ 4                                    A. The Parties

¶ 5        Sandy and Michael were married on August 1, 1992, in Winfield, Illinois. They have three children of the marriage, all of whom are emancipated. On October 7, 2014, Sandy filed a petition for dissolution of marriage.

¶ 6        Sandy was a stay-at-home parent during the marriage. She had a GED but no college education and did not pursue employment. As for Michael, he was a business owner with interests in six businesses: Four Star Tool, Inc. (Four Star), Crystal Die and Mold, Inc. (Crystal), Meadowbrook Court Partnership (Meadowbrook), Gulfstream Properties, Inc. (Gulfstream), R&D Visions, Inc. (R&D), and Schaumburg Jet, Inc. (Schaumburg Jet). Michael was the sole owner of Gulfstream, R&D, and Schaumburg Jet, which he acknowledged as marital property. He owned one-third interests in Four Star, Crystal, and Meadowbrook, which he claimed as non-marital property, alleging his interests in those companies were gifted to him by his father.

¶ 7        Sandy and Michael owned and resided in the marital residence located at 21 Polo Drive (the Polo residence). Following their separation in February 2015, both parties moved out. Sandy rented a five-bedroom lakeside house for $3600 per month. Michael purchased property at 2 Dalton Court (the Dalton residence) for $1,300,000. He resided there until early 2019, when he moved out and engaged in various remodeling efforts in advance of attempting to sell the property. At the time of trial, the Dalton residence was listed for sale.

¶ 8                                B. Pretrial Proceedings

¶ 9          During the nearly five years of pretrial litigation, Sandy was represented by six different

law firms, all of whom eventually sought and were granted leave to withdraw. At trial, Sandy

represented herself.

¶ 10          Trial was set for April 23, 2019. On February 14, 2019, the court entered a trial order

requiring, among other things, that the parties disclose Supreme Court Rule 213 (eff. Jan. 1,

2018) witnesses by February 22 and exchange marked trial exhibits by April 18.

¶ 11          On March 5, 2019, Sandy, acting *pro se*, disclosed Bruce Richman as a controlled expert

witness pursuant to Rule 213(f)(3). She did not tender any report or disclose the actual substance

of Richman's opinions, but she indicated that he would testify "in relation to" the fair market

value of Michael's interests in Four Star, Crystal, and Meadowbrook. Michael moved to bar

Richman's testimony, arguing that Sandy's disclosure was both untimely and insufficient under

Rule 213. The trial court granted Michael's motion on April 10, 2019.

¶ 12                C. Trial Proceedings and the 2020 Dissolution Judgment

¶ 13          Trial began on April 23, 2019, and continued over four days. Sandy appeared *pro se*. On

the day of trial, Michael moved to bar Sandy from offering any exhibits at trial based upon her

failure to tender any exhibits to his counsel as required by the court's February 14, 2019, order.

The trial court granted Michael's motion.

¶ 14          Sandy testified that during the marriage, Michael "took care of the finances and the

businesses" and did not include her in financial decisions. She said, "It was our understanding

that Michael would go to work and I would stay home with the kids." In 2018, she got a part-

time job as a cashier at a cafeteria earning $12 an hour.

¶ 15        Sandy presented no evidence of Michael's current assets or income. Instead, she testified at length about the lifestyle they enjoyed during the marriage. They owned three residences, two of which had private beaches. Michael owned two or three sports cars, Sandy owned a Porsche, and each of their children had their own luxury sports car. Sandy claimed to have "a document that [Michael] sold one of the racecars recently" but did not have it with her. The court sustained Michael's objection and struck the testimony.

¶ 16        Michael admitted that Sandy's testimony accurately depicted the lifestyle the family enjoyed circa 2012. He testified that after 2012, the family's income declined. Motorola and Acuity, clients which previously accounted for 95% of Four Star and Crystal's sales, moved most of their operations overseas. As a result, Four Star and Crystal downsized from approximately 70 employees in 2012 to 17 employees at the time of trial.

¶ 17        As for Michael's remaining business interests, Schaumburg Jet's only asset was a 40-year-old jet with $400,000 in associated debt. The company generated no income. The jet was up for sale, and Michael agreed to assume liability if the jet sold for less than its associated debt. Gulfstream owned a vacant parcel of land that had been on the market for the past three years; its 2017 tax return reflected no income. R&D was formed originally to support Michael's car racing hobby, but in 2005 it was changed to a marketing arm for Four Star. Michael testified that it had "no value," and its 2017 tax return reflected no income. Finally, Meadowbrook owned a parcel of real estate out of which Four Star, Crystal, R&D, and Schaumburg Jet operated.

¶ 18        Michael testified that his monthly gross income was $8300. Over Sandy's objections, Michael produced pay stubs from Four Star from January 1 through March 5, 2019, as evidence of his income. These pay stubs, along with the rest of the trial exhibits, are not included in the record on appeal.

¶ 19      The trial concluded on June 7, 2019. While the matter was still under advisement, on September 16, 2019, Sandy filed a motion to reopen proofs, alleging that on or around August 30, Schaumburg Jet sold its jet at Michael's direction. Sandy argued it would be "fair and equitable" to reopen the proofs so the proceeds of sale could be divided equitably between the parties. Sandy further alleged that in December 2018, Michael purchased a Lamborghini, casting doubt upon his testimony about his current earnings. On November 4, 2019, Sandy filed a second motion to reopen proofs, citing a March 2019 article about the sale of a racecar formerly belonging to R&D and arguing that she was entitled to half of the net proceeds of the sale. The court denied both motions.

¶ 20      On February 14, 2020, the trial court, per Judge James Kaplan, entered a judgment order dissolving the parties' marriage (the 2020 dissolution judgment). The court found, contrary to Michael's claims, that Four Star, Crystal, and Meadowbrook were marital property. The court further found a 50/50 division of the marital estate was fair and equitable. To effectuate this division, the court ordered that the parties' Polo and Dalton residences, the jet owned by Schaumberg Jet, and the vacant land owned by Gulfstream be sold and the net sale proceeds be split equally between the parties.

¶ 21      Regarding maintenance, the court noted that Sandy offered no evidence of Michael's income. Michael's pay stubs submitted at trial reflected $3038 in biweekly net income. However, the court stated that Michael's credibility "remain[s] a perplexing issue," particularly since he appeared to have "the ability to access corporate funds *** at his sole discretion." The court observed that Michael "still maintains a very lavish lifestyle" with "new luxury cars, purchase of a million dollar plus home, [and] payment of the children's college expenses." It concluded that "[t]he income of Michael cannot be determined."

¶ 22 After consideration of the statutory factors enumerated in section 504 of the Illinois Marriage and Dissolution Act (Act) (750 ILCS 5/504 (West 2018)), the court found that "the fairest way to determine maintenance is the amount currently being paid, with a review, reasonable in time to the determination of [Sandy's] quantum of marital property." The court ordered Michael to continue paying Sandy $4500 per month[1] in maintenance, ending "[t]wo (2) years from the entry of this Judgment, reviewable."

¶ 23 The judgment did not contain a valuation of Four Star, Crystal, and Meadowbrook. Instead, the judgment continued the action "for the purpose of determining valuations, earnings, retained or otherwise."

¶ 24 D. Posttrial Proceedings and the 2022 Final Judgment

¶ 25 On June 8, 2021, the trial court entered an order directing the parties to submit supplemental written closing arguments regarding the valuation of Four Star, Crystal, and Meadowbrook. The court provided that "[s]aid arguments shall be based only upon the evidence and testimony adduced at trial."

¶ 26 On or about June 28, 2021, the trial court, per Judge Kaplan, determined that the parties' supplemental closing arguments provided insufficient information to determine valuations. Judge Kaplan subsequently retired and the case was reassigned to Judge Lori Rosen, who heard additional arguments from the parties as to the valuation of Michael's businesses.

¶ 27 Pursuant to the terms of the 2020 dissolution judgment, Michael's maintenance obligation terminated on February 14, 2022. On May 31, 2022, Sandy filed an amended petition to restore support obligation in which she argued that "Michael's obligation to provide for Sandy's support should be reinstated and increased." While her petition was still pending, on

---

[1] The judgment originally provided for maintenance to be paid biweekly. This mistake was modified *sua sponte* on May 18, 2020, to provide for a $4500 monthly payment, as the court intended.

June 22, 2022, Sandy filed a motion to review maintenance and emergency motion for temporary support. On July 26, 2022, the trial court struck Sandy's May 31 petition for procedural deficiencies without reaching its merits. According to the briefs, Sandy's June 22 motion to review maintenance remains pending and unresolved before the trial court.

¶ 28 On September 15, 2022, Judge Rosen entered a final judgment (the 2022 final judgment) calculating Sandy's share of the businesses as follows: Four Star: $271,603.50; Crystal: $208,744.50; and Meadowbrook: $500,000. The court additionally incorporated all terms of the 2020 judgment in its order. Michael was ordered to comply with all terms of the judgment within 60 days.

¶ 29 Sandy, through counsel, timely filed the instant appeal, seeking review of both the 2020 dissolution judgment and the 2022 final judgment.

¶ 30 II. ANALYSIS

¶ 31 On appeal, Sandy argues that the court erred by: (1) failing to award permanent maintenance and not granting her increased maintenance; (2) not awarding her a greater share of marital assets; (3) not requiring Michael to bear sole responsibility for expenses incurred in selling the Polo, Dalton, and Gulfstream properties; (4) finding that Michael's IRA was 70% nonmarital and 30% marital; (5) denying Sandy's posttrial motions to reopen the proofs regarding Michael's alleged sales of marital assets; and (6) barring her from calling undisclosed witnesses or offering undisclosed exhibits at trial. We consider these contentions in turn.

¶ 32 A. Maintenance

¶ 33 Sandy raises multiple contentions of error regarding the trial court's award of maintenance. Regarding the 2020 dissolution judgment, she argues the court erred in (1) failing to award her permanent maintenance and (2) not awarding her higher maintenance. She also

argues the court erred in its July 26, 2022, order striking her May 31 amended petition to restore support obligation.

¶ 34    Section 504 of the Act sets forth factors for the trial court to consider in deciding a party's entitlement to maintenance and the amount and duration of said maintenance, including the duration of the marriage, the standard of living established during the marriage, the income and property of the parties, the present and future earning capacity of the parties, and whether the earning capacity of the party seeking maintenance has been impaired due to devoting time to domestic duties. 750 ILCS 5/504(a), (b-1) (West 2018). A maintenance award is within the trial court's sound discretion and will not be disturbed absent an abuse of discretion, which occurs "only where no reasonable person would take the view adopted by the trial court." *In re Marriage of Schneider*, 214 Ill. 2d 152, 173 (2005); see *In re Marriage of Donovan*, 361 Ill. App. 3d 1059, 1063 (2005) (a trial court's maintenance award "is presumed to be correct" absent any indication that the court acted arbitrarily or without conscientious judgment). The trial court is tasked with "strik[ing] a balance that is reasonable" based upon the facts of the case. (Internal quotation marks omitted.) *In re Marriage of Reynard*, 378 Ill. App. 3d 997, 1002 (2008).

¶ 35    In the 2020 dissolution judgment, the trial court awarded Sandy $4500 a month in maintenance for a period of two years. Sandy argues that the court's failure to award permanent maintenance is not supported by the facts of this case. We agree.

¶ 36     Permanent maintenance is appropriate "where a spouse has devoted significant time to raising a family in lieu of pursuing a career." *In re Marriage of Heroy*, 385 Ill. App. 3d 640, 652 (2008). It is also appropriate "where the spouse has employment skills but there is a discrepancy between her probable future income and the amount of income that would provide the standard of living she enjoyed while married." *In re Marriage of Selinger*, 351 Ill. App. 3d 611, 619

(2004). Both factors are present here. During the parties' 27½ -year marriage, Michael was the sole breadwinner; Sandy did not pursue employment but stayed home and raised their three children. The trial court found that "Sandy's role as a homemaker allowed Michael to pursue his businesses and lavish hobbies." At the time of the 2020 judgment, Sandy was 53 years old with a GED but no college education. She had a part-time job as a cashier earning $12 per hour, and the court observed that her "ability to support herself is questionable."

¶ 37    *In re Marriage of Kerber*, 215 Ill. App. 3d 248 (1991), is instructive. In *Kerber*, we found the trial court's reviewable, time-limited maintenance award was an abuse of discretion, stating that it was a "classic case for the award of permanent maintenance." *Id.* at 253. We emphasized the following facts: the 30-year duration of the marriage; the wife's high school education and the significant amount of time that would be needed for education or job training; the wife's poor health; and the division of labor during the marriage which precluded her from developing marketable skills while allowing her husband to do so. *Id.*

¶ 38    Likewise, in *In re Marriage of Drury*, 317 Ill. App. 3d 201, 210 (2000), we held the trial court abused its discretion in terminating the wife's maintenance award after 36 months and remanded for the court to award permanent maintenance. We found it significant that, during the parties' 29-year marriage, the husband was able to advance his career due to the wife's contributions to the family. As a result, there was "significant disparity" in the parties' earning capacities. Without maintenance, the wife would be forced to sell her limited assets to meet her needs, while the husband was able to contribute to her needs while still meeting his own.

¶ 39    As in *Kerber* and *Drury*, the duration of the marriage, the division of labor during the marriage, and Sandy's age, lack of education, and lack of employment history all show this is a "classic case" (*Kerber*, 215 Ill. App. 3d at 253) for permanent maintenance. Our conclusion is

bolstered by the statutory maintenance guidelines, which provide that in marriages of 20 years or more, the court, in its discretion, shall order maintenance for a period equal to the length of the marriage (here, 27½ years), or for an indefinite term. Awarding reviewable maintenance to Sandy for only two years without justification is a clear abuse of discretion.

¶ 40     Sandy additionally argues that the amount of maintenance should have been higher. However, at trial, the sole evidence of Michael's income came from Michael himself, who presented pay stubs reflecting $3038 in biweekly net income. Sandy presented no contrary evidence of Michael's income upon which the court might have based a higher maintenance award. Instead, she cites a June 12, 2017, order in which the trial court required Michael to pay Sandy temporary support of $7500 per month and argues her "support should have been restored to [that] level." Notably, the 2017 order was an unallocated support order (not a maintenance order), entered at a time when the parties' youngest child was still a minor and living with Sandy. More importantly, Sandy points to no evidence to support her assertion that $7500 would be a more reasonable maintenance award than $4500, let alone that $4500 is so unreasonable as to constitute an abuse of discretion.

¶ 41     Accordingly, we reverse the 2020 dissolution judgment's reviewable maintenance award of $4500 per month and remand for the entry of judgment granting permanent maintenance of $4500 per month. We need not reach Sandy's contentions regarding the striking of her amended petition to restore Michael's support obligation after it lapsed in February 2022 because any gap, lapse, or shortfall in maintenance will be trued up on remand.

¶ 42                                  B. Division of Marital Assets

¶ 43     Sandy next argues that the trial court should have awarded her a greater share of the marital estate. In support, she asserts that her 50% share of the estate "pales in comparison to the

lifestyle the parties enjoyed" and will not "support the use, let alone ownership, of a private jet or race car."

¶ 44        Section 503(d) of the Act requires a trial court divide marital property in just proportions by considering all relevant factors, including each spouse's contribution to the acquisition of said property, the economic circumstances of each spouse, the income and needs of each spouse, and whether the apportionment is in lieu of or in addition to maintenance. 750 ILCS 5/503(d) (West 2018). We review a trial court's allocation of the parties' marital estate for an abuse of discretion. *In re Marriage of Olson*, 223 Ill. App. 3d 636, 648 (1992).

¶ 45        We find no abuse of discretion in the trial court's 50/50 division of the estate, particularly considering our decision to award Sandy permanent maintenance. See 750 ILCS 5/503(d)(10) (West 2018). The court set forth a detailed analysis of section 503(d) factors in concluding that a 50/50 split was fair and equitable. Sandy does not claim error in any part of that analysis, much less point to any trial evidence to support such claim of error. She simply argues her share is insufficient to sustain the lifestyle she enjoyed during the marriage. However, Michael testified that his income decreased significantly after 2012 when two major clients of his businesses moved their operations overseas. The trial court properly considered this "extreme downturn" in Michael's businesses as a factor supporting an equal division of property, and we do not find its decision in this regard so unreasonable as to constitute an abuse of discretion.

¶ 46                        C. Sale of the Polo, Dalton, and Gulfstream Properties

¶ 47        In the 2020 dissolution judgment, the trial court ordered the parties' Polo and Dalton residences and the vacant land owned by Gulfstream be sold and the net proceeds of sale be split equally between the parties. Sandy asserts that any expenses incurred in connection with the sale of those properties (*e.g.*, real estate broker commissions, real estate transfer taxes, attorney fees,

and major repairs) should be borne exclusively by Michael, since he is the sole decisionmaker as to their acquisition and sale. She further states that, in the event the Dalton property sells at a loss, that loss should also be borne exclusively by Michael, since "[i]t makes no sense to suggest that Sandy should be responsible for Michael's foolishness or poor investment decisions."

¶ 48    Sandy's contentions in this regard are unsupported by any citation to the appellate record. Moreover, she cites no authority for her apparent argument that when a party is in control of marital assets, that party should bear sole responsibility for losses associated with those assets. Ordinarily, debt follows the asset. We find no abuse of discretion in the trial court's judgment that the parties share equally the expenses of sale, along with the proceeds.

¶ 49    Sandy additionally argues, for the first time on appeal, that the sale of these assets should be made subject to the court's review and approval and the net proceeds should be made subject to reallocation. This issue is forfeited by Sandy's failure to raise it before the trial court. *Dumas v. Pappas*, 2014 IL App (1st) 121966, ¶ 21 ("Issues not raised in the trial court are forfeited and may not be raised for the first time on appeal."). Nonetheless, we reject Sandy's extraordinary request to make the trial court the keeper of the assets and micromanage their sale. Sandy presents no evidence of a threat that Michael will mismanage the sale, abscond with the proceeds, or willfully diminish the net profits. Michael stands to receive 50% of the net proceeds and has no incentive to sell the assets at a loss. Should misconduct occur, Sandy may seek recourse in the trial court. But her mere fears and distrust of Michael are insufficient to impose court supervision of the sale of assets and division of proceeds.

¶ 50                              D. Characterization of Michael's IRA

¶ 51    The record reflects that Michael opened an IRA in 1989, prior to the parties' marriage. At the time of trial, it had an approximate balance of $246,291. It was Michael's uncontroverted

testimony at trial that 70% of the IRA was non-marital and that 30% was marital. When asked how he arrived at this figure, he stated: "I multiplied the years of the account, divided it out, and it came to 70 percent premarital." Michael's counsel argued that this computation "gives the benefit to" Sandy because the interest that accumulated on the nonmarital portion of the IRA was included in marital property. The trial court credited Michael's testimony, found that 30% of the IRA was marital, and ordered Michael to transfer the entire 30% marital portion to Sandy.

¶ 52        Sandy argues that the trial court erred in its characterization of Michael's IRA, although her precise contention is unclear. In her opening brief, she argues that any contributions made during the marriage should be considered marital and subject to allocation (though, confusingly, she also appears to suggest that the entire IRA should be considered marital). In her reply brief, she asserts it should be 90% marital because it had been open for 40 years at the time of trial, 36 of which were during the marriage.

¶ 53        In any event, Sandy did not introduce any evidence at trial relating to the characterization of Michael's IRA, did not attempt to impeach or discredit Michael's testimony, and never challenged the sufficiency of the evidence he presented. Moreover, Sandy points to no evidence in the record to show what contributions were made to the IRA during the marriage. Absent proof in the record to support Sandy's claim, we do not find the trial court abused its discretion in its characterization of Michael's IRA or its allocation thereof.

¶ 54                          E. Reopening of Proofs

¶ 55        Sandy next argues that the trial court erred in denying her posttrial motions to reopen proofs to introduce evidence that Michael sold various marital assets and purchased a Lamborghini. A trial court's decision as to whether to reopen proofs lies within its sound discretion. *Avila v. Chicago Transit Authority*, 2021 IL App (1st) 190636, ¶ 73. In deciding such

a motion, a court should consider (1) the existence of an excuse for not introducing the evidence at trial, (2) any unfair surprise or prejudice to the opposing party, and (3) whether the evidence is "of the utmost importance to the movant's case." *Id.*

¶ 56    We find no abuse of discretion under the circumstances of this case. The record reflects that much of the information Sandy sought to introduce existed well before trial. Sandy alleged that Michael purchased a Lamborghini in December 2018 and sold a different race car (the Andretti car) on or before March 2019, both of which occurred prior to trial. In fact, at trial, Sandy claimed to be in possession of "a document" reflecting that Michael "sold one of the racecars recently" but did not have it with her and did not have any excuse for this omission. She cannot benefit posttrial or on appeal for her self-induced failures.

¶ 57    Moreover, regarding the alleged sale of the jet owned by Schaumburg Jet, the 2020 dissolution judgment ordered the jet to be sold, and the net proceeds to be equally divided between the parties. The fact that the jet allegedly sold prior to judgment does not reflect any abuse of judgment by the trial court in declining to reopen proofs on this issue, particularly since Sandy received her requested relief, *i.e.*, an equitable division of the proceeds of sale.

¶ 58                              F. Trial Witnesses and Exhibits

¶ 59    Finally, Sandy challenges the trial court's rulings *in limine* barring her from calling Richman as a Rule 231(f)(3) expert or offering undisclosed exhibits at trial.

¶ 60    Rule 213(f)(3) (eff. Jan. 1, 2018) provides that, upon written interrogatory, a party must identify their controlled expert witnesses and state "(i) the subject matter on which the witness will testify; (ii) the conclusions and opinions of the witness and the bases therefor; (iii) the qualifications of the witness; and (iv) any reports prepared by the witness about the case." "Where a party fails to comply with the provisions of Rule 213, a court should not hesitate [in]

sanctioning the party, as Rule 213 demands strict compliance." (Internal quotation marks omitted.) *Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 109 (2004). Rule 219(c) provides that if any party "unreasonably fails to comply" with the court's discovery orders, the court may enter "such orders as are just," including barring a witness from testifying. Ill. S. Ct. R. 219(c) (eff. July 1, 2002). The imposition of Rule 219 sanctions is within the trial court's sound discretion and will not be reversed absent a clear abuse of that discretion. *Dolan v. O'Callaghan*, 2012 IL App (1st) 111505, ¶ 54.

¶ 61        We find no abuse of discretion. Sandy does not argue that her untimely disclosure of Richman met the requirements of Rule 213(f)(3) or offer any explanation for her failure to disclose her exhibits in accordance with the trial court's February 19 trial order. She merely argues that, as a *pro se* litigant, she "ha[d] no training or understand[ing] of court proceedings" and "was simply doing the best that she could given the circumstances surrounding her." However, it is well established that self-represented litigants are held to the same standards as those represented by counsel. See *In re Estate of Pellico*, 394 Ill. App. 3d 1052, 1067 (2009). We additionally find it significant that the dissolution proceedings had dragged on for nearly five years by the start of trial and Sandy had gone through six sets of attorneys. Under the circumstances, it was reasonable for the court not to permit Sandy to ambush Michael at trial with undisclosed expert opinions and exhibits.

¶ 62        Sandy nevertheless argues that instead of banning all her exhibits, the court should have conducted an exhibit-by-exhibit review by evaluating each proposed document, the nature of its import, and the impact of any surprise. Her failure to make an offer of proof regarding her exhibits precludes us from undertaking meaningful review of this contention. "[T]he key to preserving for review an error in the exclusion of evidence is an adequate offer of proof in the

trial court and a [party's] failure to make such an offer results in forfeiture of the issue." *People v. Staake*, 2017 IL 121755, ¶ 51. Without a record as to the nature and substance of Sandy's barred exhibits, we cannot evaluate the prejudice caused thereby, much less determine whether the trial court abused its discretion by not allowing their introduction at trial.

¶ 63                                                              III. CONCLUSION

¶ 64        For the foregoing reasons, we reverse the 2020 dissolution judgment's maintenance award of $4500 per month as to its duration, and we remand for the entry of judgment granting permanent maintenance of $4500 per month. We affirm the 2020 dissolution judgment and the 2022 final judgment in all other respects.

¶ 65        Affirmed in part, reversed in part, and remanded.